RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0188p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LOREN T. ROBINSON,

*Petitioner-Appellant*,

*v.*

JEFFREY WOODS, Warden,

*Respondent-Appellee*.

No. 16-2067

---

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 2:14-cv-00050—R. Allan Edgar, District Judge.

Argued:  June 7, 2018

Decided and Filed:  August 24, 2018

Before:  BOGGS and GRIFFIN, Circuit Judges; HOOD, District Judge.[*]

---

## COUNSEL

**ARGUED:**  Kristin Cope, BAKER BOTTS, L.L.P., Dallas, Texas, for Appellant.  Linus Banghart-Linn, OFFICE OF THE ATTORNEY GENERAL OF MICHIGAN, Lansing, Michigan, for Appellee.  **ON BRIEF:**  Kristin Cope, BAKER BOTTS, L.L.P., Dallas, Texas, for Appellant.  Linus Banghart-Linn, OFFICE OF THE ATTORNEY GENERAL OF MICHIGAN, Lansing, Michigan, for Appellee.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

---

**OPINION**

---

GRIFFIN, Circuit Judge.

The Supreme Court has interpreted the Sixth Amendment's jury guarantee to mean that "[a]ny fact that, by law, increases the penalty for a crime . . . must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 103 (2013). In this appeal, petitioner Loren Robinson seeks a writ of habeas corpus under 28 U.S.C. § 2254, arguing that the Michigan trial court violated his Sixth Amendment right to a jury trial by using judge-found facts to score sentencing variables that increased his mandatory minimum sentence. Because *Alleyne* clearly established that mandatory minimum sentences may only be increased on the basis of facts found by a jury or admitted by a criminal defendant, *Alleyne*, 570 U.S. at 108, the Michigan Court of Appeals' disposition of Robinson's case "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1). Accordingly, we reverse the judgment of the district court, conditionally grant Robinson's petition limited to his sentence, and remand to the district court with instructions to remand to the state sentencing court for further proceedings consistent with this opinion and the United States Constitution.

I.

Petitioner and two of his cohorts sold the victim a large amount of crack cocaine on credit, beat the victim when he was unable to repay petitioner, and, eventually, extorted from the victim's parents the roughly $1,000 petitioner felt he was owed for the drugs. As a result, a Michigan jury convicted petitioner of extortion, M.C.L. § 750.213, delivery of a controlled substance, § 333.7413(2), unlawful imprisonment, § 750.349b, and aggravated assault, § 750.81a(1). *People v. Robinson*, No. 303236, 2013 WL 3942387, at *1 (Mich. Ct. App. July 30, 2013) (per curiam).

As is standard in Michigan criminal practice, the Michigan Department of Corrections prepared, and the trial court considered, a "Presentence Investigation Report" (PSIR) in

conjunction with petitioner's sentencing. *See, e.g.*, *People v. Harper*, 739 N.W.2d 523, 548 n.72 (Mich. 2007) ("Michigan courts have long held that a sentencing court may presume that unchallenged facts contained in a PSIR are accurate.").[1]  In general, the Department sets guidelines ranges by scoring offense and offender variables, M.C.L. §§ 777.22, 777.50–.57, many of which do not reflect the mere elements of the offenses for which a defendant was convicted, *see, e.g.*, M.C.L. § 777.44 (directing the sentencing court to score 10 points if "[t]he offender was a leader in a multiple offender situation").  The parties agree, and the PSIR reflects, that the sentencing court scored multiple variables that went beyond the mere elements of the offenses for which Robinson was convicted, *see, e.g.*, M.C.L. § 777.39 (number of victims); § 777.40 (exploitation of a vulnerable victim), which resulted in higher minimum-sentence ranges than would have been warranted without the judge-found facts.

The PSIR provided the following sentencing guidelines ranges for the minimum sentence of each conviction: between 84 and 175 months for the extortion conviction (with a 30-year-maximum sentence), between 19 and 38 months for the delivery-of-a-controlled-substance conviction (with a 40-year-maximum sentence), between 50 and 125 months for the unlawful-imprisonment conviction (with a 22-years-and-6-months-maximum sentence), and no recommended range for the aggravated-assault conviction (which comes with a one-year-maximum sentence).  The Department recommended that the court give petitioner a minimum sentence near the bottom of each range.  At the time of petitioner's sentencing, the ranges were mandatory, allowing a trial judge to "depart" from them only with a showing of "substantial and compelling" reasons.  M.C.L. § 769.34(3).

The sentencing judge reviewed and accepted the recommended scores for the guidelines variables but disagreed with the Department's "low end" recommendation.  Instead, he sentenced petitioner to a minimum of 150 months to a maximum of 30 years for the extortion conviction,

---

[1]Petitioner's unopposed motion for this court to take judicial notice of his PSIR, which was not included in the lower court record, is granted.  This court has the power to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and may do so on appeal.  Fed. R. Evid. 201(b), (d).  We have previously noted that we can "take judicial notice of facts contained in state court documents pertaining to [a petitioner]'s prior conviction so long as those facts can be accurately and readily determined."  *United States v. Davy*, 713 F. App'x 439, 444 (6th Cir. 2017) (citing *United States v. Ferguson*, 681 F.3d 826, 834–35 (6th Cir. 2012)).  And we find no reason not to do so in this case.

38 months to 40 years for the delivery-of-a-controlled-substance conviction, 10 years to 22 years and 6 months for the unlawful-imprisonment conviction, and one year for the aggravated-assault conviction, all to be served concurrently.

The Michigan Court of Appeals affirmed his convictions and sentences. *Robinson*, 2013 WL 3942387, at *1. Petitioner argued, in relevant part, that the sentence violated his Sixth Amendment rights because it was based on judge-found facts. *Id*. at *5. On that issue, the court held:

> Defendant claims that the trial court improperly scored the offense variables because the facts used to support the scoring of them were not found beyond a reasonable doubt by the jury, contrary to the holding of *Blakely v. Washington*, [542 U.S. 296] (2004). However, our Supreme Court has definitively held that *Blakely* does not apply to Michigan's indeterminate sentencing scheme. *People v. Drohan*, [715 N.W.2d 778, 791–92] ([Mich.] 2006). We are required to follow the decisions of the Supreme Court. *People v. Strickland*, [810 N.W.2d 660, 665] ([Mich. Ct. App.] 2011). Accordingly, defendant's argument is without merit.

*Id*. This brief discussion failed to address whether the United States Supreme Court's then-recent opinion in *Alleyne*, 570 U.S. 99 (issued roughly a month and a half prior), affected the court's analysis. Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, which denied leave in a boilerplate order. *People v. Robinson*, 840 N.W.2d 352 (Mich. 2013) (order).

Robinson filed a timely habeas petition under 28 U.S.C. § 2254, asserting eleven separate grounds for relief. Our concern is his contention relating to "improper scoring of the legislatively imposed sentencing guidelines." After ordering a response to the petition, the district court denied Robinson's petition outright and declined to issue a certificate of appealability (COA). *Robinson v. Woods*, No. 2:14-cv-50, 2016 WL 3256837, at *18 (W.D. Mich, June 14, 2016). This court granted petitioner's motion for a COA, limited to his Sixth Amendment sentencing issue.

## II.

"In an appeal from the denial of habeas relief, we review the district court's legal conclusions de novo and its factual findings for clear error." *Scott v. Houk*, 760 F.3d 497, 503

(6th Cir. 2014) (citation omitted).  Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a state conviction may be overturned for an issue adjudicated on the merits in state court if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  To prevail under the "contrary to" clause of § 2254(d)(1), a petitioner must show that the state court "arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or that it "confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite" to that reached by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  "[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotation marks omitted), "[t]his is a difficult to meet, and highly deferential standard for evaluating state-court rulings," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).

III.

Petitioner challenges his sentence as violative of the Sixth Amendment.  Because we hold that *Alleyne* clearly established the unconstitutionality of Michigan's mandatory sentencing regime, we reverse the district court and conditionally grant petitioner habeas relief, limited to his sentence.

A.

As an initial matter, the district court erred in its analysis of petitioner's Sixth Amendment claim.  The court held that the claim was meritless because, under *Harris v. United States*, 536 U.S. 545, 566 (2002), the Sixth Amendment prohibited only sentences beyond the statutory maximum that were based on judge-found facts.  *Robinson*, 2016 WL 3256837, at *11.  Though the court acknowledged that *Alleyne* overruled *Harris*, it reasoned that *Harris* still controlled because *Alleyne* did not apply retroactively on collateral review.  *Id*. at *11 n.1.

But the district court failed to appreciate that the Supreme Court issued *Alleyne* while petitioner's direct appeal was pending—*Alleyne* was decided a little more than a month before

the Michigan Court of Appeals issued its opinion in this case.**2** And Supreme Court opinions apply to all criminal cases pending on direct review, no matter how much of a departure the decision represents from prior caselaw. *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."); *see also United States v. Booker*, 543 U.S. 220, 268 (2005) (Opinion of BREYER, J.) (applying the Court's Sixth Amendment holding to all cases pending on direct review). Therefore, the district court erred in holding that *Harris* controlled. We thus must now examine whether Michigan's scheme, as applied to Robinson, was contrary to clearly established federal law as embodied in *Alleyne*.

B.

The Sixth Amendment of the United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." U.S. CONST. amend. VI. By operation of the Sixth Amendment, "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see also Jones v. United States*, 526 U.S. 227, 253 (1999) (SCALIA, J., concurring). This rule applies equally to the states through the Due Process Clause of the Fourteenth Amendment. *Apprendi*, 530 U.S. at 476.

Over the course of the last 30 years, the Supreme Court has grappled with various components of modern sentencing schemes, to determine whether they complied with the original understanding of the Sixth Amendment. *See, e.g.*, *Alleyne*, 570 U.S. at 103; *Apprendi*, 530 U.S. at 490; *Jones*, 526 U.S. at 248–49; *McMillan v. Pennsylvania*, 477 U.S. 79 (1986).

---

**2**We must "look through" the Michigan Supreme Court's standard denial order to the Michigan Court of Appeals' opinion because the Court of Appeals opinion is the last reasoned state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803–05 (1991). The Supreme Court recently clarified that this look-through "rule" is a rebuttable presumption. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[T]he State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed."). However, neither party argues that the Michigan Supreme Court's boilerplate denial order relied on reasons different from the Court of Appeals opinion.

In *Alleyne*, the Court applied, for the first time, its previous conclusions regarding the imposition of penalties beyond the statutory maximum to determinations of mandatory minimum sentences, holding that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 570 U.S. at 103. *Alleyne* was a watershed opinion, overruling two prior precedents—*Harris*, 536 U.S. at 566, and *McMillan*, 477 U.S. at 93—which had held that the Sixth Amendment allowed increases in mandatory *minimum* sentences on the basis of judge-found facts.

The question before us is whether *Alleyne*'s holding rendered Michigan's then-mandatory sentencing regime unconstitutional, such that the Michigan Court of Appeals decision in Robinson's case was contrary to clearly established federal law. *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

In *Alleyne*, the Supreme Court addressed the constitutionality of 18 U.S.C. § 924(c)(1)(A), which provided a five-year sentence for any person who "uses or carries a firearm" in relation to a "crime of violence," and increased the minimum sentence to seven years if the judge found that the firearm was brandished and to ten years if it was discharged. 570 U.S. at 103–04 (quoting 18 U.S.C. § 924(c)(1)(A)(i)–(iii)). While the defendant was indicted and jury-convicted under the five-year "use[] or carr[y] provision," the judge sentenced him to seven years for brandishing, as was authorized by the statute. *Id*. at 104. However, the Supreme Court held that the increased minimum sentence based on judge-found facts violated the defendant's Sixth Amendment jury guarantee, applying its *Apprendi* line of cases to mandatory minimums. *Id*. at 111–12. In doing so, the Court reasoned that, because *Apprendi* held "that any 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' are elements of the crime," "the principle applied in *Apprendi* applies with equal force to facts increasing the mandatory minimum." *Id*. (quoting *Apprendi*, 530 U.S. at 490).

This rationale applies equally to Michigan's mandatory minimum sentences. At all relevant times, Michigan's sentencing regime operated through the use of offense categories,

M.C.L. § 777.5, dual axis scoring grids, *e.g.*, M.C.L. § 777.61, minimum ranges, *id.*, and a holistic focus on offender and offense characteristics. Generally speaking, the guidelines operate by "scoring" offense-related variables (OVs) and offender-related, prior-record variables (PRVs).[3] These OV and PRV point totals are then inputted into the applicable sentencing grid to yield the guidelines range, within which judges choose a minimum sentence. *See* Sentencing Manual, p. 10. And at the time of Robinson's sentencing, Michigan's sentencing guidelines were mandatory—arguably more so than the previously mandatory federal sentencing guidelines. *Compare* M.C.L. § 769.34(2)–(3) ("[T]he minimum sentence imposed by a court of this state for a felony . . . shall be within the appropriate sentence range[.] . . . A court may depart from the appropriate sentence range . . . if the court has a substantial and compelling reason for that departure[.]"), *and People v. Babcock*, 666 N.W.2d 231, 237 (Mich. 2003) (defining "substantial and compelling" as "an objective and verifiable reason that keenly or irresistibly grabs [a court's] attention" (citation omitted)), *with* 18 U.S.C. § 3553(b) ("[T]he court shall impose a sentence of the kind, and within the range, referred to in [the sentencing guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."), *and Koon v. United States*, 518 U.S. 81, 95 (1996) (allowing departures without reference to "objective and verifiable" requirements).

At bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences. 570 U.S. at 111–12. And, although we are not bound by its decision, we note that the Michigan Supreme Court recently so held in *People v. Lockridge*, 870 N.W.2d 502, 513–14 (Mich. 2015) ("[A] straightforward application of the language and holding in *Alleyne* leads to the conclusion that Michigan's sentencing guidelines scheme violates the Sixth Amendment."). While Michigan's regime uses a

---

[3]Each of the seven PRVs is scored in every case. M.C.L. § 777.21(1)(b); *see also* Michigan Sentencing Guidelines Manual, pp. 4–5, available at https://mjieducation.mi.gov/documents/sgm-files/94-sgm/file (hereinafter "Sentencing Manual"). Not every OV is scored in every case. Instead, only certain OVs are scored depending on the "crime group" (person, property, etc.) the conviction offense falls under. M.C.L. § 777.22; *see also* Sentencing Manual, pp. 6–7.

number of OVs and PRVs to come to a guidelines range, rather than the slightly more straightforward three-tier scheme addressed in *Alleyne*, 570 U.S. at 103–04, this distinction does not except the Michigan regime from *Alleyne*'s fundamental principles.   In sum, *Alleyne* proscribed exactly that which occurred at petitioner's sentencing hearing—the use of "[f]acts that increase the mandatory minimum sentence" that were never submitted to the jury and found beyond a reasonable doubt.   570 U.S. at 108.   The Michigan Court of Appeals' conclusion that Michigan's sentencing scheme did not violate the Sixth Amendment was, therefore, "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Respondent argues, in part, that the scheme is constitutional because sentences in Michigan are "indeterminate," in that the sentencing judge sets the minimum sentence using judge-found facts to score a number of OVs and PRVs, while the criminal statute for the particular offense sets the maximum sentence.   *See* M.C.L. § 769.8(1) ("[T]he court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term, except as otherwise provided in this chapter.   The maximum penalty provided by law shall be the maximum sentence[.]").   This argument of "indeterminacy" is based upon the fact that criminal defendants in Michigan do not know how long they will serve in prison, because, between the minimum sentence and statutory maximum sentence, prisoners are subject to the jurisdiction of the parole board and have no right to parole.   M.C.L. § 791.234(1), (11); *Morales v. Mich. Parole Bd.*, 676 N.W.2d 221, 236 (Mich. Ct. App. 2003).   Given that the Supreme Court has never retreated from its position that indeterminate sentencing poses no constitutional issue, *Blakely*, 542 U.S. at 308–09; *see also Lockridge*, 870 N.W.2d at 514 ("It is certainly correct that the United States Supreme Court has repeatedly distinguished between 'determinate' and 'indeterminate' sentencing systems and referred to the latter as not implicating Sixth Amendment concerns and that *Alleyne* did nothing to alter or undermine that distinction."), it may initially appear that Michigan's scheme is constitutional.

But, as acknowledged by the Michigan Supreme Court, the United States Supreme Court has never used the phrase "indeterminate sentencing" in the same manner as the Michigan courts.   *See Lockridge*, 870 N.W.2d at 515–16.   Instead, the Supreme Court uses the term

"indeterminate" to refer to regimes that "involve judicial factfinding . . . [b]ut [where] the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence." *Blakely*, 542 U.S. at 309; *id.* at 332 (O'Connor, J., dissenting) ("Under indeterminate systems, the length of the sentence is entirely or almost entirely within the discretion of the judge or of the parole board, which typically has broad power to decide when to release a prisoner."). Thus, though before *Lockridge* the Michigan courts considered their sentencing regime to be "indeterminate" because it produces a sentence with a minimum and a maximum with parole-board discretion in between, it is clear this is not how the Supreme Court uses that term in the Sixth Amendment context.[4] Moreover, regardless of how the Michigan Supreme Court previously characterized its system, it is clear that Michigan did not have indeterminate sentencing under the prevailing Supreme Court caselaw.

Respondent also argues that *Alleyne* does not implicate Michigan's sentencing regime because the minimum sentence in Michigan criminal practice is nothing more than a parole-eligibility date, and the Supreme Court has maintained that there is no constitutional right to parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). But this argument misses the mark. While an increase in a Michigan minimum sentence may delay only the date on which a defendant becomes eligible for parole, the lack of a constitutional right to parole is wholly unrelated to the right to have a jury find the facts that "alter the prescribed range of sentences to which a defendant is exposed." *Alleyne*, 570 U.S. at 108. This right arises at sentencing, well before parole (or the denial thereof) comes into play. And that is the right addressed in the *Apprendi* and *Alleyne* line of cases. *See, e.g.*, *id*. Accordingly, *Alleyne* requires us to hold that the Michigan trial court's use of judge-found facts to score mandatory sentencing guidelines that resulted in an increase of petitioner's minimum sentence violated petitioner's Sixth Amendment rights. *Id*.

---

[4]In other contexts, this court has explicitly referred to Michigan's sentencing regime as an indeterminate one. *See, e.g.*, *Shaya v. Holder*, 586 F.3d 401, 403 (6th Cir. 2009) (describing, in dicta, an immigration petitioner as having received "an indeterminate sentence of nine months to ten years" "under Michigan law"). But *Shaya* was not a Sixth Amendment sentencing case, and it certainly was not a determination "by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

IV.

For these reasons, we reverse the judgment of the district court and conditionally grant Robinson's petition for a writ of habeas corpus, as it pertains to his Sixth Amendment sentencing claim. We remand this case to the district court with instructions to remand to the state sentencing court for sentencing proceedings consistent with this opinion and the Constitution. The district court shall grant a writ of habeas corpus unless the state initiates, within 180 days, such sentencing proceedings.