RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0151p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MARCUS MAGNUM REIGN,

*Petitioner-Appellant,*

*v.*

LORI GIDLEY, Warden,

*Respondent-Appellee.*

No. 18-1086

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cv-11692—Gershwin A. Drain, District Judge.

Argued: May 9, 2019

Decided and Filed: July 10, 2019

Before: ROGERS, DONALD, and THAPAR, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** Michael H. McGinley, DECHERT LLP, Philadelphia, Pennsylvania, for Appellant. Linus Richard Banghart-Linn, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Michael H. McGinley, DECHERT LLP, Philadelphia, Pennsylvania, for Appellant. Linus Richard Banghart-Linn, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

───────────────

**OPINION**

───────────────

ROGERS, Circuit Judge. Marcus Magnum Reign was convicted of armed robbery in Michigan state court. He was originally sentenced under a mandatory guidelines scheme that

determined his minimum sentence and incorporated judge-found facts.  As became clear before the judgment was final, such a sentence would violate his Sixth Amendment right to a jury trial. *See Robinson v. Woods*, 901 F.3d 710, 714 (6th Cir. 2018); *People v. Lockridge*, 870 N.W.2d 502, 513–14 (Mich. 2015) (applying *Alleyne v. United States,* 570 U.S. 99 (2013), and *United States v. Booker*, 543 U.S. 220 (2005)).  In the end the sentencing court recognized the Sixth-Amendment-driven change in the law from a mandatory to an advisory guideline scheme.  The sentencing court nonetheless imposed a minimum sentence within the relevant guidelines, taking into account such judge-found facts, reasoning that the advisory nature of the guidelines did not affect the court's previous application of the guidelines.  Magnum Reign[1] now appeals the denial of habeas relief by the federal district court below, arguing that he is entitled to a resentencing hearing, essentially because the guidelines were considered mandatory at the time of his hearing, even though not at the time that his sentence became final.  Declining to conduct such a new hearing in this case was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, and habeas relief was therefore properly denied.  *See* 28 U.S.C. § 2254(d)(1).

In August 2014, Magnum Reign pled guilty to one count of armed robbery in Michigan state court.  At the time, minimum sentences in Michigan were chosen by the sentencing court from a range computed under nearly mandatory guidelines.  The state sentencing court calculated Magnum Reign's minimum-sentence guidelines range at 108–180 months.  This calculation was built in part upon judge-found facts, neither admitted by Magnum Reign nor found by a jury.  The sentencing court chose a minimum sentence of 144 months, at the middle of the range.

After Magnum Reign moved to correct his sentence in January 2015, the sentencing court recalculated the guidelines range for his minimum sentence at 81–135 months, or roughly 6 ¾ to 11 ¼ years.  At the second sentencing hearing, however, Magnum Reign's counsel incorrectly stated that the range was "around 7 years to about 13 years."  Even though the sentencing court again stated its intention to sentence in the middle of his guidelines range, the court gave Magnum Reign a minimum sentence of ten years, halfway between seven and thirteen, instead of nine years, the actual middle of his range.

---

[1]Petitioner's last name is Magnum Reign.

Five days after this first resentencing, the Michigan Supreme Court handed down its decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). In *Lockridge*, the Michigan Supreme Court held that the Michigan guidelines scheme violated defendants' Sixth Amendment rights under *Alleyne*, because it was all but mandatory and incorporated judge-found facts to increase minimum sentences. *See* 870 N.W.2d at 513–14. The Michigan Supreme Court's remedy was to "*Booker*-ize the Michigan sentencing guidelines, i.e., render them advisory only." *Id.* at 520; *see Booker*, 543 U.S. at 245. *Lockridge* accordingly made the Michigan guidelines for minimum sentences akin to the federal guidelines—advisory, but "a highly relevant consideration in a trial court's exercise of sentencing discretion." 870 N.W.2d at 520. Thus, *Lockridge* did not change how the guidelines ranges for minimum sentences were *computed*; the only change was that they were no longer binding on the sentencing judge. To provide guidance to Michigan appellate courts, the Michigan Supreme Court instructed that "in cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error." *Id.* at 523.

After his first resentencing, and after *Lockridge* came down, Magnum Reign again moved for a correction of his sentence. Magnum Reign argued that his previous sentencing counsel had been ineffective by stating that the guidelines range for a minimum sentence was 7 to 13 years, when in fact it was 6 ¾ to 11 ¼ years. Magnum Reign also argued that the sentencing court had relied on judicial factfinding in violation of *Alleyne*. Using the language of *Lockridge*, he wrote that "the Court should reconsider the sentence and whether it would have imposed a 'materially different' sentence using advisory sentencing guidelines."

In a written order on March 2, 2016, the sentencing court did just that. After granting Magnum Reign's motion in part, based on the earlier misstatement by his counsel, and lowering his sentence to nine years, the sentencing court declined to resentence under *Lockridge*. The court wrote that it "did not feel constrained by the then-mandatory nature of the guidelines. That is, the Court would have applied its same reasoning regardless of whether sentencing occurred before or after *Lockridge*. Accordingly, *Lockridge* does not require resentencing in this case."

Put differently, the sentencing court again decided on a middle-of-the-guidelines sentence even though the guidelines were by then advisory, but did so without holding another hearing.

Magnum Reign appealed his sentence to the Michigan Court of Appeals and the Michigan Supreme Court. In both appeals, he argued that the sentencing court had failed to follow *Lockridge* properly, because, in his view, if the sentencing court had followed *Lockridge* it would not have considered judge-found facts and would have lowered his guidelines range. Both courts denied his appeal in summary orders.

Magnum Reign then filed a petition for writ of habeas corpus in the federal district court below, asserting among other things that the sentencing court had based his sentence on "unconstitutional judicial fact finding" in violation of his Sixth Amendment rights. The district court denied his petition. *See Magnum Reign v. Gidley*, Case No. 2:17-cv-11692, 2017 WL 4918533 (E.D. Mich. Oct. 31, 2017).

We granted Magnum Reign a certificate of appealability with respect to his Sixth Amendment claim. In reviewing Magnum Reign's habeas appeal, we look to the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 803–05 (1991). The last reasoned state court decision was the state sentencing court's order in which it imposed a minimum sentence within the guidelines range without holding another hearing.

This decision by the sentencing court was not "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," and is therefore entitled to deference under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d)(1). There is no Supreme Court decision that clearly requires a sentencing court in this posture to hold a resentencing hearing.

It is true that, at an earlier point in the state proceedings, the sentencing court had imposed a minimum sentence based on state guidelines deemed mandatory. However, the final minimum sentence actually challenged by Magnum Reign in the instant appeal was imposed by the state trial court at a point in the proceedings when it was clear under state law that the trial court must treat as advisory the Michigan guidelines for imposing a minimum sentence.

Moreover, at that point the sentencing court explicitly recognized that the Michigan guidelines were advisory.

Magnum Reign argues that the sentencing court at that point should have declined to consider certain judge-found facts, but that argument is flatly without merit. Throughout his briefing, Magnum Reign contends that a resentencing would necessarily result in a lower sentence because his guidelines range would be lower post-*Lockridge*, but he presents no reasoning that supports this contention. According to Magnum Reign, "[h]ad the State Trial Court conducted a proper harmful error analysis, the relevant question would have been whether Magnum Reign would have received the same sentence without the judicially found facts . . . not whether the judge might impose the same sentence under the new discretionary sentencing regime." Reply Br. at 9.

But the constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts. Indeed, under Michigan law the sentencing court must still consider judge-found facts. *See Lockridge*, 870 N.W.2d at 520 n.28. The most recent edition of the Michigan Sentencing Guidelines Manual explains that "sentencing courts are **still required** to determine the applicable guidelines range [and] [a]ccordingly, the guidelines-scoring content of this manual remains applicable, with the caveat that the calculated guidelines range is advisory rather than binding." Mich. Sentencing Guidelines Manual at 3 (2019) (emphasis in original).

At oral argument, Magnum Reign's attorney argued for the first time that the harm here was Magnum Reign's inability to argue for a downward departure in a post-*Lockridge* world. In other words, by depriving him of a full resentencing hearing, the sentencing court deprived Magnum Reign of the chance to make an argument that the court should depart from the guidelines under a sentencing scheme where such departures were more likely. This is a stronger argument than the argument in his briefing regarding the calculation of the guidelines, but it does not change the result. Aside from the fact that it came too late, this argument fails for two reasons. First, Magnum Reign had the ability to make this argument to the sentencing court. He could have asked for a new hearing in order that he might request a downward departure. Instead, he asked the court to consider whether the mandatory nature of the guidelines made a

material difference in his sentence—the court answered that question, and said it did not. Second, under AEDPA, Magnum Reign must do more than demonstrate the possibility of a lower sentence if his petition were granted. He must demonstrate that the sentencing court's decision contravened clear dictates of the Supreme Court, and this he has not done.

Finally, Magnum Reign argues that Supreme Court precedent forecloses the procedure of the sentencing court here. He contends that under *Booker*, when a defendant makes a Sixth Amendment objection to the mandatory application of sentencing guidelines, the reviewing court cannot consider whether the constitutional error was harmless, but must instead hold a resentencing hearing. He relies on cases after *Booker* in which an appellate court, reviewing a pre-*Booker* sentence, had remanded and required a sentencing hearing on remand, rather than merely remanding for the district court to determine whether such a hearing was required.

These cases do not help Magnum Reign for two reasons. First, whatever the merits of these varying approaches to *Booker* remands, the Supreme Court has not clearly established which approach is correct, such that the requirements of AEDPA are not met. Second, Magnum Reign's case is not a remand, but rather an appeal from the district court's sentence finally imposed when the guidelines were known and understood to be advisory.

In *Booker*, the Supreme Court held that the federal sentencing guidelines were unconstitutional because they incorporated judge-found facts, 543 U.S. at 226–44, and in a "remedy opinion" the Court fixed the problem by rendering the guidelines advisory, 543 U.S. at 244–68. The Court did not hold that a trial court must conduct a resentencing hearing if presented with this objection to a mandatory guidelines sentence.

Magnum Reign reads much into the final paragraph of the Court's opinion. There the Court noted that it was remanding one of the defendant's cases for resentencing, but cautioned that:

> That fact does not mean that we believe that every sentence gives rise to a Sixth Amendment violation. Nor do we believe that every appeal will lead to a new sentencing hearing. That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the "plain-error" test. It is also because, in cases not involving a Sixth Amendment violation, whether resentencing is warranted or

whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine.

*Id.* at 268.

Magnum Reign's argument rests on a negative inference from the final sentence:  if, "in cases *not* involving a Sixth Amendment violation," the harmless-error doctrine *may* apply, this means that in cases that *do* involve a Sixth Amendment violation, the harmless-error doctrine may *not* apply.  This negative inference does not "clearly establish" the law for AEDPA's purposes.  "The text of § 2254(d)(1) . . . suggests that the state court's decision must be substantially different from the relevant precedent of the Supreme Court."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  The state court's decision was not substantially different from these final lines of *Booker*.  What is more, the Supreme Court in *Booker* was discussing how federal appellate courts should consider *appeals* by federal defendants who were sentenced under the mandatory guidelines.  Magnum Reign presented his Sixth Amendment challenge to the sentencing court on a motion for resentencing.  The end of the remedy opinion in *Booker* does not clearly forbid the original sentencing court from determining, prior to a direct appeal, whether a previously imposed sentence would be altered in an advisory scheme.

Moreover, our precedent does not require us to deem such a reading of *Booker* to be clearly established law.  In *United States v. Milan*, 398 F.3d 445 (6th Cir. 2005), we considered the proper procedure for reviewing appeals by federal defendants in the wake of *Booker*.  The Second Circuit had recently issued a decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), in which it had held that such appeals should be remanded to the district court for it to determine in the first instance whether resentencing was necessary under the advisory guidelines (that is, the Second Circuit recommended doing what the Michigan Supreme Court did in *Lockridge*).  *Milan* read *Booker* differently than the Second Circuit, and rejected the so-called "*Crosby* remand."  *See* 398 F.3d at 452.  To Magnum Reign, then, *Milan* stands for the proposition that *Booker* clearly forbade lower courts from reviewing their own sentences for harmless error when the defendant has objected on Sixth Amendment grounds.

However, *Milan* did not stand on "clear" language from the Supreme Court, but rather relied upon implicit cues.  As *Milan* explained, "[i]t is certainly our obligation as courts of appeal

to carefully consider what the Supreme Court said in *Booker*. Nevertheless, we cannot ignore what the Court *did*." *Id.* at 452 (emphasis in original). Because the Court in *Booker* remanded for resentencing, in *Milan* we held that we would remand for resentencing, contrary to *Crosby*. It is hard to read *Milan* as standing for the proposition that the Supreme Court in *Booker* clearly prohibited *Crosby*-type remands.

In fact, *Milan* and *Crosby* serve to demonstrate why *Booker* cannot be the foundation for habeas relief here. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted). *Milan* and *Crosby* show that "fairminded jurists could disagree" on the propriety of a lower court's reviewing its own sentence for harmless error. Magnum Reign points out that even the Second Circuit later rejected the *Crosby* remand (for preserved errors), *see United States v. Fagans*, 406 F.3d 138, 140–41 (2005), but this development has little force here. Whatever the current unpopularity of the *Crosby* remand, such disfavor does not diminish the fact that different federal judges read the final lines of *Booker* in different ways to require different remedies. This fact requires the conclusion that "fairminded jurists could disagree" on the action taken by the sentencing court here.

Magnum Reign's position is also not supported by *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018). In *Robinson*, the petitioner was sentenced in Michigan when the guidelines were mandatory, and he appealed when they were mandatory (that is, pre-*Lockridge*). *See id.* at 713. We granted his petition for a writ of habeas corpus and remanded "with instructions to remand to the state sentencing court for sentencing proceedings consistent with this opinion and the Constitution." *Id.* at 718. Magnum Reign urges that because we remanded in *Robinson*, we must do so in his case. But the petitioner in *Robinson* was in a fundamentally different position, having never been able to ask the sentencing court to reconsider its sentence under an advisory scheme. In *Robinson*, we essentially granted as relief the chance to do what Magnum Reign has already done: ask the sentencing court if it would change its mind once the guidelines became advisory.

No clearly established federal law prohibits the sentencing court's procedure here—neither *Booker*, nor, for what it is worth, *Milan* or *Robinson*. Further, there was no constitutional error in the substance of the sentencing court's decision.

For the foregoing reasons, we affirm the judgment of the district court.