RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0179p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JESSIE LOBBINS,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

No. 15-6386

───────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
Nos. 3:09-cr-00244-2; 3:15-cv-00618—Todd J. Campbell, Chief District Judge.

Argued:  May 2, 2018

Decided and Filed:  August 21, 2018

Before:  CLAY, KETHLEDGE, and STRANCH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Michael D. Lieberman, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellant.  Cecil Woods VanDevender, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.  **ON BRIEF:**  Michael D. Lieberman, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellant.  Cecil Woods VanDevender, Van Vincent, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.  Jessie Lobbins, Bruceton Mills, West Virginia, pro se.

───────────────

## OPINION

───────────────

KETHLEDGE, Circuit Judge.  Jessie Lobbins moved under 28 U.S.C. § 2255 to set aside his sentence for witness tampering, arguing that his trial counsel had failed to object to a jury

instruction that misstated an element of that offense. The district court denied Lobbins's motion on the ground that the instruction made no difference to the jury's verdict. We respectfully disagree and reverse.

In 2009, Lobbins was detained at a state facility, the Davidson County Criminal Justice Center in Nashville, while awaiting trial on federal charges for murder and other crimes related to his membership in the "Vice Lords" gang. Another gang member, Lavonta Churchwell, was in the same facility awaiting trial on state charges for murdering a Vanderbilt professor and the professor's sister. Churchwell boasted to some other inmates about committing the Vanderbilt murders. One of those inmates, Maurice Boyd, relayed that information to a state prosecutor. Churchwell soon heard about Boyd's cooperation and said that he was "going to have Maurice f***ed up." Soon thereafter, Lobbins entered Boyd's cell with a prison shank and repeatedly slashed and stabbed him. Boyd survived, but needed more than 200 stitches.

Based on that assault, the government tacked on to Lobbins's indictment a charge for witness tampering in violation of 18 U.S.C. § 1512(a)(2)(A) and § 1512(a)(2)(C). A jury thereafter convicted Lobbins of all charges. The district court sentenced him to two consecutive terms of life imprisonment for murder and a concurrent term (among several others) of 30 years' imprisonment for witness tampering. We affirmed.

Lobbins then moved in the district court to vacate his sentence for witness tampering. In support, Lobbins argued that one of the court's jury instructions had misstated an element of the witness-tampering charge and that his trial counsel had provided constitutionally ineffective assistance when he failed to object to that instruction. The district court denied the motion. We review that decision de novo. *See United States v. Coleman*, 835 F.3d 606, 612 (6th Cir. 2016).

To obtain relief, Lobbins must show that his counsel's failure to object to the jury instruction was constitutionally "deficient" and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To make either showing, Lobbins must first show that the instruction was in fact erroneous.

The instruction at issue concerned the intent necessary to commit the offense. The relevant provision of the federal witness-tampering statute provides in relevant part: "Whoever

uses physical force or the threat of physical force against any person . . . with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . shall be punished" as described elsewhere in the statute. 18 U.S.C. § 1512(a)(2)(C). To show that Lobbins violated this provision, therefore, the government was required to prove that he (1) used or threatened physical force against a person (2) with an intent to "hinder, delay, or prevent" a "communication" to a federal "law enforcement officer or judge" (3) about the "commission or possible commission" of a federal offense. *Cf. Fowler v. United States*, 563 U.S. 668, 672 (2011) (reciting the elements of 18 U.S.C. § 1512(a)(1)(C)). The instruction here concerned the second element, namely that the defendant intended to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States[.]" 18 U.S.C. § 1512(a)(2)(C).

Almost verbatim the same phrase appears in an adjacent provision, namely 18 U.S.C. § 1512(a)(1)(C). (That provision applies when the defendant "kills or attempts to kill another person," rather than merely "uses physical force[,]" which is when § 1512(a)(2)(C) applies.) In *Fowler*, the Supreme Court held that this same phrase—"prevent the communication by any person to a law enforcement officer or judge of the United States"—as used in § 1512(a)(1)(C), requires the government to "show *a reasonable likelihood* that," absent the defendant's actions, the victim would have communicated with a federal (as opposed to state) "law enforcement officer." 563 U.S. at 677 (emphasis in original). Meanwhile, absent good reason to do otherwise, we give the same words the same meaning throughout the same statute. *See Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.*, 522 U.S. 479, 501-02 (1998). We did precisely that, for example, in giving the phrase "designed in whole or in part . . . to conceal or disguise[,]" the same meaning that the Supreme Court had given that phrase in a "neighboring provision" of the federal money-laundering statute. *See United States v. Faulkenberry*, 614 F.3d 573, 585-86 (6th Cir. 2010) (construing 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(a)(2)(B)(i)). We see no good reason to do otherwise here, and the government offers none. Thus, we hold, the Supreme Court's "reasonable likelihood" standard applies to § 1512(a)(2)(C) of the federal witness-tampering statute just as it does to § 1512(a)(1)(C).

But here the district court instructed the jury to apply a notably lower standard: namely, whether, absent the attack, Boyd "might" have spoken to a federal law enforcement officer. Trial Tr. at 1846. To say that Boyd "might" have spoken to a federal officer is no different than saying that such a communication was "possible." *See Webster's Third New International Dictionary* 1432, 1771 (2002). And a "mere possibility" standard is precisely what the Supreme Court rejected in *Fowler*. *See* 563 U.S. at 676. Hence the district court's instruction was erroneous.

A separate question is whether Lobbins's counsel was constitutionally "deficient" when he failed to object to that instruction. *Strickland*, 466 U.S. at 687. A defense lawyer's failure to object to an erroneous jury instruction that, as here, materially lightens the government's burden of proof is typically deficient performance. *See, e.g.*, *Joseph v. Coyle*, 469 F.3d 441, 460-62 (6th Cir. 2006); *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999). The government argues that the contrary is true here for two reasons. First, the government says, Lobbins's counsel had "good reasons" (Gov't Br. at 18) not to anticipate that the Supreme Court's construction of the phrase "prevent the communication by any person to a law enforcement officer or judge of the United States[,]" as used in § 1512(a)(1)(C), would extend to the (nearly identical) phrase "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States[,]" as used in § 1512(a)(2)(C). The putative "good reasons," however, boil down to the mere observation that § 1512(a)(2)(C) includes the words "hinder" and "delay," whereas § 1512(a)(1)(C) does not. And the government offers no reason why those words would lead anyone to think that the "reasonable likelihood" standard of § 1512(a)(1)(C) does not apply to § 1512(a)(2)(C). To the contrary, for all the reasons stated above, *Fowler* "clearly foreshadowed," if not foretold, that the same standard applies to both provisions. *Lucas*, 179 F.3d at 420.

Lobbins must also show a "reasonable probability" that a properly instructed jury would have acquitted him of witness tampering. *Strickland*, 466 U.S. at 694. To have convicted him of that offense, a properly instructed jury would have needed to find a "reasonable likelihood" that, absent Lobbins's attack, Boyd would have spoken to a federal (as opposed to state) official about Churchwell's boast that he murdered the Vanderbilt professor and the professor's sister. *See*

*Fowler*, 563 U.S. at 677 (emphasis omitted). But the murders were investigated by state officials, prosecuted in state court, and—as punishment for them—a state judge sentenced Churchwell to life imprisonment in a state penitentiary. *See Churchwell v. State*, No. M2015-01567-CCA-R3-PC, 2016 WL 5253203 (Tenn. Crim. App. Sept. 21, 2016); *State v. Churchwell*, No. M2011-00950-CCA-R3-CD, 2013 WL 430118 (Tenn. Crim. App. Feb. 4, 2013). Moreover, Boyd spoke to a state prosecutor, not a federal one, about Churchwell's boasts. Nothing about the actual investigation or prosecution of those murders, therefore, would support a finding that Boyd was reasonably likely to talk to a federal official about them.

The district court held to the contrary because of a simple mistake. Specifically, the district court held that the instructional error was harmless because, at Lobbins's trial, Boyd testified that he "had been providing information to . . . the ATF" about the murders. Op. at 21. Respectfully, however, Boyd did not so testify. Instead, notwithstanding two leading questions that sought to elicit precisely that testimony, Boyd testified only that he spoke to a state prosecutor and that "several people [were] in the room." Trial Tr. at 1409.

The government, for its part, now argues that the Vanderbilt murders had a sufficient "federal nexus" to support Lobbins's conviction for witness tampering. Gov't Br. at 29. Specifically, the government says that Lobbins was a "federal detainee" who "assaulted another federal detainee [*i.e.*, Boyd] to prevent him from telling law enforcement about a double murder" that could have been charged federally because it was gang-related. Gov't Br. at 29-30. But that argument only underscores the importance of focusing on the words of the statute rather than on a vague paraphrase once removed. The statute says nothing about a "federal nexus." What the statute requires, rather, is the likelihood of a "communication" to a federal official about "the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(a)(2)(C). That Lobbins and Boyd happened to be federal detainees does not, on this record, support any inference that Boyd was likely to talk to a federal official about Churchwell's boasts. Even the government does not argue otherwise. Nor could the jury at Lobbins's trial have drawn that inference from the possibility that the Vanderbilt murders could have been charged federally. Indeed the jury was not even told about that possibility. Moreover, "because of the frequent overlap between state and federal crimes," the government's argument "would transform a

federally oriented statute into a statute that would deal with crimes, investigations, and witness tampering that, as a practical matter, are purely state in nature." *Fowler*, 563 U.S. at 677. Such was the case here.

The government also argues that the instructional error was harmless because Boyd in fact talked to federal officials about the Vanderbilt murders—albeit after Lobbins assaulted him. But that conversation—which of course happened as a result of the assault itself—tells us nothing about whether, "in the *absence* of the" assault, Boyd would have talked to federal officials about the murders. *Fowler*, 563 U.S. at 678 (emphasis added). Simply stated, that an assault *resulted in* conversations with federal officials hardly means that the defendant engaged in the assault to *prevent* them. *See United States v. Johnson*, 874 F.3d 1078, 1082 (9th Cir. 2017) (rejecting a similar argument as "nonsensical"). In sum, had the jury been properly instructed, it would have probably—if not necessarily—voted to acquit. (That same conclusion dispenses with the government's argument that counsel had good strategic reasons for failing to object to the instruction.)

Finally, the government argues that the jury could have found Lobbins guilty under the other witness-tampering provision listed in his indictment: namely, § 1512(a)(2)(A), which makes it a crime to use force with the intent to prevent someone from testifying in a federal proceeding. The government's theory here is that Lobbins assaulted Boyd to prevent Boyd from testifying at his own sentencing hearing. Suffice it to say that the government lacks any evidence for that theory as well.

Lobbins separately asks us to vacate his other convictions or to order the district court to allow him to relitigate his other § 2255 claims. But we considered those claims when he sought a certificate of appealability, and found it undebatable that none entitles him to relief. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). We therefore limit our decision to his *Fowler* claim. *See* 28 U.S.C. § 2253(c)(1).

The district court's December 4, 2015 order is reversed as to Lobbins's *Fowler* claim, and the case is remanded with instructions to vacate Lobbins's conviction on Count 66 of the indictment and for any further proceedings consistent with this opinion.