RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0271p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

FREDDIE CHASE,

                *Petitioner-Appellant*,

    *v.*

MATT MACAULEY, Warden,

                *Respondent-Appellee*.

No. 19-1202

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cv-13435—Denise Page Hood, District Judge.

Argued: May 5, 2020

Decided and Filed: August 20, 2020

Before: COLE, Chief Judge; BATCHELDER and STRANCH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Melissa M. Salinas, Nina Cahill, Maggie Turner, UNIVERSITY OF MICHIGAN LAW SCHOOL, Ann Arbor, Michigan, for Appellant. Scott R. Shimkus, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Melissa M. Salinas, Nina Cahill, Maggie Turner, UNIVERSITY OF MICHIGAN LAW SCHOOL, Ann Arbor, Michigan, for Appellant. Jared D. Schultz, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

COLE, C.J., delivered the opinion of the court in which STRANCH, J., joined. BATCHELDER, J. (pp. 18–21), delivered a separate dissenting opinion.

---

**OPINION**

---

COLE, Chief Judge.  Freddie Chase is a habeas petitioner who was sentenced under a Michigan sentencing scheme that allowed judge-found facts to raise his mandatory minimum sentence.  The parties agree that this violated Chase's Sixth Amendment rights as described by the Supreme Court in *Alleyne v. United States*, 570 U.S. 99 (2013).  They dispute, however, whether Chase can overcome the procedural default of his *Alleyne* claim, as he did not raise this claim on direct appeal.  Chase argues that his appellate counsel's failure to raise an *Alleyne* claim on direct appeal constituted ineffective assistance of appellate counsel, thereby demonstrating cause and prejudice to excuse any procedural default.  We agree.  We therefore reverse the judgment of the district court, conditionally grant Chase's petition for a writ of habeas corpus, and remand to the district court with instructions to remand to the state sentencing court.

## I.  BACKGROUND

A jury convicted Freddie Chase of one count of kidnapping under Mich. Comp. Laws § 750.349, two counts of first-degree criminal sexual conduct under Mich. Comp. Laws § 750.520b, one count of unlawful imprisonment under Mich. Comp. Laws § 750.349b, and two counts of assault with a dangerous weapon ("felonious assault") under Mich. Comp. Laws § 750.82.  *People v. Chase*, No. 317102, 2014 WL 5364177, at *1 (Mich. Ct. App. Oct. 21, 2014) (per curiam).  In June 2013, the state court imposed consecutive terms of 25 to 80 years' imprisonment on the criminal sexual conduct counts, to be served concurrently with a 30- to 80-year sentence for the kidnapping, a 5- to 15-year sentence for unlawful imprisonment, and a 1- to 4-year sentence for each count of felonious assault.

In determining Chase's sentence, the court relied upon Michigan's sentencing guidelines. At the time, a Michigan sentencing court could only depart from the guidelines' mandatory sentencing ranges upon a showing of "a substantial and compelling reason."  Mich. Comp. Laws § 769.34(3).  Under Michigan's sentencing scheme, courts used "prior record variables" and

"offense variables" to calculate a defendant's sentencing range. Mich. Comp. Laws §§ 777.21(1)(b), 777.22.

In Chase's case, the sentencing court increased Chase's minimum sentencing range based on offense variables that had not been found by the jury, such as serving as a "leader" under Mich. Comp. Laws § 777.44, causing "[b]odily injury requiring medical treatment" under Mich. Comp. Laws § 777.33, and causing "[s]erious psychological injury requiring professional treatment" under Mich. Comp. Laws § 777.34. In all, Chase calculates that judge-found facts doubled his mandatory minimum sentence under Michigan's sentencing guidelines, increasing it from 135 to 270 months. Warden Matt MaCauley ("Warden") agrees that judge-found facts were used to increase Chase's mandatory minimum sentence.

Three days after Chase's sentencing, the U.S. Supreme Court issued its decision in *Alleyne v. United States*, 570 U.S. 99, 103 (2013), holding that the Sixth Amendment requires any fact that increases a defendant's mandatory minimum sentence be found by a jury, not a judge. Because Chase's direct appeal was not complete at the time that *Alleyne* was decided, that decision applies to his case. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). A few weeks after *Alleyne* was decided, the state trial court appointed appellate counsel to represent Chase in his direct appeal.

Several months later, on December 12, 2013, the Michigan Court of Appeals issued a ruling regarding the impact of *Alleyne* on Michigan's sentencing scheme. *People v. Herron*, 845 N.W.2d 533 (Mich. Ct. App. 2013) (per curiam). The defendant in *Herron* filed a supplemental brief after *Alleyne* was decided, arguing that the use of judicial factfinding in Michigan's mandatory sentencing scheme was unconstitutional in light of *Alleyne*. *Id.* at 537. The Court of Appeals rejected the defendant's contention, reasoning that under the particular characteristics of Michigan's sentencing scheme, "judicial fact-finding in scoring the sentencing guidelines produces a recommended range for the minimum sentence of an indeterminate sentence," not a "mandatory minimum" within the meaning of *Alleyne*. *Id.* at 539.

Because *Herron* was a published decision of the Michigan Court of Appeals, all subsequent panels of the Court of Appeals were bound to follow it until the law was modified by

the Michigan Supreme Court or a special panel of the Court of Appeals convened to resolve disagreement between appellate panels. *See* Mich. Ct. R. 7.215(J)(1). However, this did not dissuade a number of defendants in Michigan from continuing to raise *Alleyne* claims in their direct appeals. *See, e.g.*, *People v. Taylor,* No. 318827, 2015 WL 340392, at *4 (Mich. Ct. App. Jan. 27, 2015) (per curiam); *People v. Horn*, No. 316757, 2014 WL 6804518, at *7 (Mich. Ct. App. Dec. 2, 2014), *rev'd in part*, 870 N.W.2d 896 (Mich. 2015).[1]

On February 13, 2014, another panel of the Michigan Court of Appeals issued a decision addressing *Alleyne*'s impact on Michigan's sentencing scheme. *See People v. Lockridge*, 849 N.W.2d 388 (Mich. Ct. App. 2014). Though the *Lockridge* panel rejected the defendant's *Alleyne* claim because it was bound by *Herron*, *id.* at 391, two judges on the three-judge panel wrote concurring opinions, each expressing the view that *Herron* was wrongly decided and detailing at length why *Alleyne* rendered Michigan's sentencing scheme unconstitutional, *id.* at 391–405 (Beckering, J., concurring), 405–08 (Shapiro, J., concurring).

On March 20, 2014, more than a month after the Michigan Court of Appeals' *Lockridge* decision criticizing *Herron*, Chase's attorney filed an opening brief in Chase's direct appeal. Chase's attorney raised only one argument: that Chase's trial counsel had been ineffective for failing to request a missing evidence instruction based on the prosecution's failure to turn over the recording of a 911 call. Chase's appellate brief raised no claim related to his sentence and made no mention of *Alleyne*.

In contrast, other defendants who filed briefs around this time persisted in raising *Alleyne* claims. *See, e.g.*, *People v. Minor*, No. 315281, 2014 WL 5306030, at *2 (Mich. Ct. App. Oct. 16, 2014) (per curiam), *rev'd in part*, 870 N.W.2d 915 (Mich. 2015); *People v. Cutter*, No. 317355, 2014 WL 6679313, at *5 (Mich. Ct. App. Nov. 25, 2014) (per curiam), *rev'd in part*,

---

[1]In these cases raising *Alleyne* claims, the defendants' appellate briefs were filed in January and early February of 2014—*i.e.*, just after the *Herron* decision was issued. *See* Docket Entry 6, *People v. Taylor*, No. 318827 (Mich. Ct. App. Jan. 10, 2014); Docket Entry 17, *People v. Horn*, No. 316757 (Mich. Ct. App. Feb. 6, 2014). We may take judicial notice of the dockets for these Michigan Court of Appeals cases, and others cited *infra*, which are available at https://courts michigan.gov/courts/coa/pages/casesearch.aspx. *See Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) ("[F]ederal courts may take judicial notice of proceedings in other courts of record." (quoting *Granader v. Public Bank*, 417 F.2d 75, 82–83 (6th Cir. 1969))); *Normand v. McAninch*, 210 F.3d 372 (Table), at *1 n.1 (6th Cir. 2000) (taking judicial notice of a docket sheet).

878 N.W.2d 286 (Mich. 2016); *People v. Lockmondy*, No. 317412, 2014 WL 7004028, at *1–2 (Mich. Ct. App. Dec. 11, 2014) (per curiam); *People v. Haggard*, No. 318625, 2015 WL 674365, at *4 (Mich. Ct. App. Feb. 17, 2015) (per curiam), *rev'd in part*, 870 N.W.2d 899 (Mich. 2015); *People v. Evans*, No. 318214, 2015 WL 847141, at *3 (Mich. Ct. App. Feb. 26, 2015) (per curiam). The defendants' appellate briefs in these cases were filed after *Herron* and the panel decision in *Lockridge*, but before the Michigan Supreme Court weighed in on this question—*i.e.*, in the same time frame as Chase's brief.**[2]**

On June 11, 2014, three months after Chase's appellate brief was filed, the Michigan Supreme Court granted leave for the defendant in *Lockridge* to appeal in order for Michigan's highest court to address *Alleyne*'s impact on Michigan's sentencing scheme. *People v. Lockridge*, 846 N.W.2d 925 (Mich. 2014). That same day, the Michigan Supreme Court ruled that the application for leave to appeal in *Herron* would be held in abeyance until it decided *Lockridge*. *People v. Herron*, 846 N.W.2d 924 (Mich. 2014).

While the *Lockridge* case was pending before the Michigan Supreme Court, panels of the Michigan Court of Appeals were bound by *Herron*, as "a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals." Mich. Ct. R. 7.215(C)(2). Nonetheless, given the *Lockridge* Court of Appeals decision critiquing *Herron* and the Michigan Supreme Court's agreement to hear the case, more defendants in Michigan continued to raise *Alleyne* challenges to their sentence during this time. *See, e.g.*, *People v. Young*, No. 317981, 2014 WL 7338904, at *8 (Mich. Ct. App. Dec. 23, 2014) (per curiam), *rev'd in part*, 870 N.W.2d 722 (Mich. 2015); *People v. Parker*, No. 319089, 2015 WL 774637, at *3 (Mich. Ct. App. Feb. 24, 2015) (per curiam), *rev'd in part*, 870 N.W.2d 912 (Mich. 2015); *People v. Matsey*, No. 319076, 2015 WL 849005, at *2 (Mich. Ct. App. Feb. 26, 2015) (per curiam), *rev'd in part*, 870 N.W.2d 565 (Mich. 2015); *People v. Johnson*, No. 318833, 2015 WL 1122283, at *8 (Mich. Ct. App. Mar. 12, 2015) (per curiam), *rev'd in part*,

---

**[2]**In particular, the defendants' appellate briefs in these cases were filed in April and May of 2014. *See* Docket Entry 45, *People v. Minor,* No. 315281 (Mich. Ct. App. Apr. 18, 2014); Docket Entry 29, *People v. Cutter*, No. 317355 (Mich. Ct. App. May 29, 2014); Docket Entry 33, *People v. Lockmondy*, No. 317412 (Mich. Ct. App. May 28, 2014); Docket Entry 16, *People v. Haggard*, No. 318625 (Mich. Ct. App. May 27, 2014); Docket Entry 12, *People v. Evans*, No. 318214 (Mich. Ct. App. Apr. 21, 2014).

873 N.W.2d 565 (Mich. 2016); *People v. Charleston*, No. 320128, 2015 WL 1277007, at *2 (Mich. Ct. App. Mar. 19, 2015) (per curiam), *rev'd in part*, 870 N.W.2d 690 (Mich. 2015).**³**

Moreover, where a defendant had failed to raise an *Alleyne* claim in his opening brief but subsequently sought to add such a claim after the Michigan Supreme Court granted leave to appeal in *Lockridge,* the Court of Appeals permitted him to do so. *See* Order Granting Mot. to File Suppl. Br., *People v. Stokes*, No. 319136 (Mich. Ct. App. June 26, 2014) (No. 25), available at https://courts.michigan.gov/courts/coa/pages/casesearch.aspx; *see also People v. Stokes*, No. 319136, 2015 WL 849039, at *3 (Mich. Ct. App. Feb. 26, 2015) (per curiam).  Chase's attorney filed no such supplemental brief.

On July 9, 2014, about a month after the Michigan Supreme Court agreed to address the question of *Alleyne*'s impact on the Michigan sentencing guidelines, the state filed its appellate brief in Chase's direct appeal.  And on October 21, 2014, the Michigan Court of Appeals issued its decision in Chase's case, rejecting Chase's sole claim regarding the failure of trial counsel to request an adverse instruction based on the prosecution's failure to produce a 911 tape.  *Chase,* 2014 WL 5364177, at *3.  Chase then filed an application for leave to appeal to the Michigan Supreme Court, which was denied on April 28, 2015, in a short order saying that the court was "not persuaded that the questions presented should be reviewed by this Court."  *People v. Chase*, 862 N.W.2d 202 (Mich. 2015).  For other defendants who applied for leave to appeal around this time and had raised *Alleyne* claims in their direct appeal, the Michigan Supreme Court held their applications in abeyance pending its decision in *Lockridge*.  *See, e.g.*, *People v. Kupres*, 862 N.W.2d 193 (Mich. 2015) (April 28, 2015 abeyance order); *People v. Simmons*, 862 N.W.2d 186 (Mich. 2015) (same); *People v. Minor*, 862 N.W.2d 224 (Mich. 2015) (same); *People v. Jackson*, 862 N.W.2d 217 (Mich. 2015) (same).

---

**³**The defendants' appellate briefs in these cases were filed after the Michigan Supreme Court granted review in *Lockridge* but before the court issued its decision.  *See* Docket Entry 29, *People v. Young*, No. 317981 (Mich. Ct. App. July 15, 2014); Docket Entry 14, *People v. Parker*, No. 319089 (Mich. Ct. App. Aug. 20, 2014); Docket Entry 49, *People v. Matsey*, No. 319076 (Mich. Ct. App. Sept. 3, 2014); Docket Entry 31, *People v. Johnson*, No. 318833 (Mich. Ct. App. Aug. 13, 2014); Docket Entry 23, *People v. Charleston*, No. 320128 (Mich. Ct. App. Aug. 20, 2014).

The Michigan Supreme Court issued its decision in *Lockridge* on July 29, 2015, holding that *Alleyne* "applies to Michigan's sentencing guidelines and renders them constitutionally deficient[]" because "the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the 'mandatory minimum' sentence under *Alleyne*." *People v. Lockridge*, 870 N.W.2d 502, 506 (Mich. 2015). To remedy the violation, the court severed the statutory provision that made the guidelines mandatory. *Id.* The court expressly "rejected" and "overrule[d]" the Michigan Court of Appeals' decision in *Herron*. *Id.* at 512, 524.

Subsequently, in light of its *Lockridge* decision, the Michigan Supreme Court reversed the Court of Appeals' judgments in a slew of cases where the intermediate appellate court had erroneously rejected defendants' *Alleyne* claims under the now-overruled *Herron* decision, remanding to the defendants' respective sentencing courts. *See, e.g.*, *People v. Cutter*, 878 N.W.2d 286 (Mich. 2016); *People v. Horn*, 870 N.W.2d 896 (Mich. 2015); *People v. Young*, 870 N.W.2d 722 (Mich. 2015); *People v. Haggard*, 870 N.W.2d 899 (Mich. 2015); *People v. Parker*, 870 N.W.2d 912 (Mich. 2015).

Two months after the Michigan Supreme Court's decision in *Lockridge*, Chase filed a pro se motion for relief from judgment in the state trial court pursuant to Michigan Court Rule 6.500 *et seq.* Chase asserted, in relevant part, that the sentencing court's judicial fact-finding in his case had violated *Alleyne* and his appellate counsel had been constitutionally ineffective in failing to raise this claim on direct appeal.

On November 24, 2015, the state trial court denied Chase's motion for relief from judgment and his request for appointment of counsel. The court rejected Chase's *Alleyne* claim because he had not previously raised it to the sentencing court or the Court of Appeals. The state trial court concluded that Chase had not shown "good cause and actual prejudice" under Michigan Court Rule 6.508(D)(3) to excuse his failure to raise this claim earlier.

The Michigan Court of Appeals and the Michigan Supreme Court, in boilerplate orders, both denied Chase's application for leave to appeal. Chase then filed a pro se petition for a writ

of habeas corpus in the United States District Court for the Eastern District of Michigan, reiterating the claims that he had raised in his motion for relief from judgment.

While Chase's petition was pending before the district court, our court issued a published decision in *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018). Like Chase, the habeas petitioner Loren Robinson was sentenced in Michigan state court during a time when the sentencing guidelines "were mandatory, allowing a trial judge to 'depart' from them only with a showing of 'substantial and compelling' reasons." *Id.* at 713 (quoting Mich. Comp. Laws § 769.34(3)). And just like in Chase's case, *Alleyne* was issued after Robinson was sentenced but before his direct appeal was decided, and thus *Alleyne* applied to his case. *Id.* at 714–15. However, unlike Chase's attorney, Robinson's appellate counsel had argued on direct appeal that the court's "sentence violated his Sixth Amendment rights because it was based on judge-found facts." *Id.* at 713. The Michigan Court of Appeals rejected this assertion on its merits in an unpublished decision. *Id.* (citing *People v. Robinson*, No. 303236, 2013 WL 3942387, at *5 (Mich. Ct. App. July 30, 2013) (per curiam)). The Michigan Supreme Court denied Robinson leave to appeal. *People v. Robinson*, 840 N.W.2d 352 (Mich. 2013).[4] Robinson then filed a habeas petition under 28 U.S.C. § 2254, raising an *Alleyne* claim that mirrors the claim Chase raises here.

When Robinson's petition reached our court, we applied deference as required by the Antiterrorism and Effective Death Penalty Act of 1996 (*i.e.*, "AEDPA deference") in considering his *Alleyne* claim, recognizing that we could only grant relief if the state court's adjudication of Robinson's claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Robinson*, 901 F.3d at 714 (quoting 28 U.S.C. § 2254(d)(1)). We determined that "*Alleyne* clearly established the unconstitutionality of Michigan's mandatory sentencing regime," *id.*, and "proscribed exactly that which occurred at petitioner's sentencing hearing—the use of '[f]acts [to] increase the mandatory minimum sentence' that were never submitted to the jury and found

---

[4]This denial of leave to appeal occurred on December 23, 2013, just after the Michigan Court of Appeals' decision in *Herron* and before the competing Court of Appeals' opinion in *Lockridge* explained why *Alleyne* rendered Michigan's scheme unconstitutional. This stands in contrast to Chase's case, where, by the time Chase filed for leave to appeal to the Michigan Supreme Court, the Michigan Supreme Court had already granted review in *Lockridge* and was holding cases raising *Alleyne* claims in abeyance until *Lockridge* was decided. *See, e.g.*, *Kupres*, 862 N.W.2d at 193.

beyond a reasonable doubt," *id.* at 717 (quoting *Alleyne*, 570 U.S. at 108). We therefore held that the state court's "conclusion that Michigan's sentencing scheme did not violate the Sixth Amendment was . . . 'contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States[]'" in *Alleyne. Id.* (quoting 28 U.S.C. § 2254(d)(1)). As a result, we conditionally granted Robinson's habeas petition and remanded to the district court with instructions to remand to the state sentencing court for further proceedings. *Id.* at 718.

Approximately six months after our *Robinson* decision, the district court denied Chase's petition for habeas relief. In relevant part, the district court determined that Chase's *Alleyne* claim was procedurally defaulted pursuant to Michigan Court Rule 6.508(D)(3), and that he could not show cause and prejudice to excuse this procedural default based on ineffective assistance of appellate counsel because the merits of his *Alleyne* claim "would not have been obvious to appellate counsel at the time he prepared [Chase's] direct appeal." (Dist Ct. Op. & Order, R. 12, PageID 1527–28.) The district court also denied a certificate of appealability.

A month later, Chase filed motions with our court for appointment of counsel and for a certificate of appealability. We granted Chase's request for counsel and granted a certificate of appealability as to whether Chase's appellate counsel rendered ineffective assistance by failing to raise an *Alleyne* claim on direct appeal and whether Chase can show cause and prejudice to excuse the procedural default of his *Alleyne* claim.

## II. ANALYSIS

We review de novo the legal conclusions of the district court in its denial of habeas relief. *See Amos v. Renico*, 683 F.3d 720, 726 (6th Cir. 2012). Before we reach the merits of any constitutional claim in habeas proceedings, we first ask if we have the authority to do so. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (explaining that "procedural-bar issue[s]" should "ordinarily" "be resolved first" in habeas cases). Generally, "a federal court will not hear a petitioner's claim if that claim is procedurally defaulted." *Haliym v. Mitchell*, 492 F.3d 680, 690 (6th Cir. 2007). "This prohibition is derived from the principle that federal courts will not review a state court decision that rests on adequate and independent state grounds." *Id.*

In determining whether there has been a procedural default, we "look through" the unexplained orders from the Michigan appellate courts to review the state trial court's opinion denying Chase's motion for relief from judgment, as this is the last-reasoned state court decision. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The state trial court held that Chase had failed to meet the requirements of a state procedural rule, Michigan Court Rule 6.508(D)(3). This rule requires that for any claim that "could have been raised on appeal from the conviction and sentence," the defendant show "good cause for failure to raise such grounds on appeal" and "actual prejudice." Mich. Ct. R. 6.508(D)(3). The state court's rejection of Chase's claim under Rule 6.508(D)(3) was "an independent and adequate state ground." *See Amos*, 683 F.3d at 733. In turn, we conclude that Chase's claim was procedurally defaulted.

We may proceed, however, to reviewing the merits of Chase's procedurally defaulted *Alleyne* claim if Chase can show cause and prejudice to excuse the default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Chase argues that constitutionally ineffective assistance of appellate counsel excuses his procedural default, which is a well-recognized basis for showing cause and prejudice. *See id.* at 451–52. We generally require, in this context, that the habeas petitioner raise an ineffective-assistance-of-counsel claim to the state court, which the parties agree Chase has done. *See id.* at 452.

"An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). In particular, "[t]he latter must meet the higher AEDPA standard of review, while the former need not." *Id.* at 237; *see also, e.g.*, *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 225 (6th Cir. 2019); *Joseph v. Coyle,* 469 F.3d 441, 459 (6th Cir. 2006). Thus, we review de novo the question of whether ineffective assistance of appellate counsel excuses Chase's procedural default of his *Alleyne* claim.

"In order to show ineffective assistance of counsel excusing a procedural default," we generally require a defendant to "establish that [he] had a constitutional right to counsel at the procedural stage at which the alleged attorney error occurred." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). *But see Martinez v. Ryan*, 566 U.S. 1, 16–17 (2012) (describing an exception). Chase meets this requirement, as he alleges ineffectiveness in his representation on

direct appeal, a stage at which the Supreme Court has established a constitutional right to the effective assistance of counsel. *See Evitts v. Lucey*, 469 U.S. 387, 393–94 (1985).

Chase "must [also] show that [his] appellate counsel's failure to raise" the claim "rose to the level of a constitutional violation" under *Strickland v. Washington,* 466 U.S. 668 (1984). *McFarland*, 356 F.3d at 699. *Strickland* sets forth a two-prong analysis for assessing ineffective-assistance-of-counsel claims: 1) "the defendant must show that counsel's performance was deficient[,]" and 2) "the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. As described below, Chase meets both of these requirements.

## A. Deficient Performance

Under the first prong of *Strickland*, courts assess whether "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. In *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999), we identified some "considerations that ought to be taken into account in determining whether an attorney on direct appeal performed reasonably competently":

(1) Were the omitted issues "significant and obvious"?

(2) Was there arguably contrary authority on the omitted issues?

(3) Were the omitted issues clearly stronger than those presented?

(4) Were the omitted issues objected to at trial?

(5) Were the trial court's rulings subject to deference on appeal?

(6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

(7) What was appellate counsel's level of experience and expertise?

(8) Did the petitioner and appellate counsel meet and go over possible issues?

(9) Is there evidence that counsel reviewed all the facts?

(10) Were the omitted issues dealt with in other assignments of error?

(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Id.* at 427–28. This list is not exhaustive, but instead merely offers inquiries for consideration. *Id.* at 428.

Several of these considerations are relevant to the present appeal and militate in favor of concluding that Chase's appellate counsel performed deficiently. The *Alleyne* claim was "significant and obvious," *id.* at 427, given that the U.S. Supreme Court's decision in "*Alleyne* clearly established the unconstitutionality of Michigan's mandatory sentencing regime," *Robinson*, 901 F.3d at 714. Moreover, the obviousness of the claim is evidenced by the fact that numerous other defendants raised it during the same time period that Chase's attorney failed to do so.

The omitted issue, the *Alleyne* claim, is also "clearly stronger" than the one claim that Chase's appellate counsel did present—a weak claim regarding trial counsel's failure to ask for an adverse inference jury instruction. *Mapes*, 171 F.3d at 427; *see also Chase,* 2014 WL 5364177, at *3 (rejecting Chase's sole claim on direct appeal because an adverse inference instruction was not warranted). The sentencing court's decision to rely on judge-found facts to enhance Chase's mandatory minimum was not subject to deference on appeal, as it presented a clear violation of Chase's Sixth Amendment rights. *See Mapes*, 171 F.3d at 427. This omitted issue was not "dealt with in other assignments of error," as the only assignment of error raised on direct appeal did not regard Chase's sentence at all. *See id.* at 428. Lastly, it is hard to see how the decision to omit the *Alleyne* claim in favor of raising an obviously weaker claim was a reasonable decision. *See id.* After all, *Alleyne* had "clearly established" the unconstitutionality of Michigan's sentencing scheme. *Robinson*, 901 F.3d at 714.

The Warden's counterarguments rest on a distorted characterization of the state of the law at the time of Chase's direct appeal. The Warden asserts that counsel is not required to "predict" future changes in the law. But the cases upon which the Warden relies are inapposite. The change in law, *Alleyne*, had already come at the time of Chase's direct appeal; no prediction was necessary. Michigan state courts were without authority to openly violate a "clearly established" holding of the U.S. Supreme Court. *See Robinson*, 901 F.3d at 714 (declaring that *Alleyne* itself "clearly established" that Michigan's scheme was unconstitutional).

This case is not akin to the cases upon which the Warden relies, where the application of Supreme Court precedent to a state sentencing scheme was unclear or subject to reasonable disagreement among jurists. *See, e.g.*, *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 288 (6th Cir. 2010) (declining to find counsel ineffective for failing to anticipate how Ohio courts would interpret the ambiguous impact of *Blakely v. Washington*, 542 U.S. 296 (2004), on Ohio sentencing law). To the contrary, we already indicated when we granted habeas relief in *Robinson* that no reasonable jurist could possibly find that Michigan's mandatory sentencing scheme was constitutional under *Alleyne*. *See Keys v. Booker*, 798 F.3d 442, 449 (6th Cir. 2015) ("[T]his court may issue a writ of habeas corpus only in instances where all fairminded jurists would agree that the state court's decision conflicts with Supreme Court precedent.").

Moreover, while it is true that *Herron* was binding precedent in Michigan during Chase's direct appeal, this does not defeat Chase's assertion of deficiency. In "rare case[s]," courts can "find ineffective assistance of counsel based upon . . . [an] attorney's failure to make an [argument] that would have been overruled under the then-prevailing law." *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999); *see also Shaw v. Wilson*, 721 F.3d 908, 917–18 (7th Cir. 2013) (holding an attorney's performance was deficient even though "an intermediate court likely would have rejected the argument at the time"); *Mayo v. Henderson*, 13 F.3d 528, 533–34 (2d Cir. 1994) ("[T]he attorney's omission of a meritorious claim cannot be excused simply because an intermediate appellate court would have rejected it.").

In particular, an attorney can be found deficient if she fails to raise a claim whose merit is "clearly foreshadowed" at the time. *Lobbins v. United States*, 900 F.3d 799, 803 (6th Cir. 2018) (quoting *Lucas*, 179 F.3d at 420); *see also Thompson*, 598 F.3d at 288. Before Chase's attorney filed his opening appellate brief, judges on the Michigan Court of Appeals panel in *Lockridge* had clearly and forcefully detailed why *Alleyne* rendered Michigan's sentencing scheme unconstitutional. *See Lockridge*, 849 N.W.2d at 391–405 (Beckering, J., concurring) (detailing why *Herron* was wrongly decided, both by attacking the decision's reasoning directly and by describing the Supreme Court's decisions in *Apprendi v. New* Jersey, 530 U.S. 466 (2000), and its progeny); *id.* at 405 (Shapiro, J., concurring) (explaining that *Herron* "does not comport with the constitutional mandate of *Alleyne*"). Furthermore, the Michigan Supreme Court granted

review in *Lockridge* early on in the pendency of Chase's appeal, before the state even filed its brief. *See Lockridge*, 846 N.W.2d at 925. Defendant after defendant continued to raise *Alleyne* challenges despite the existence of *Herron*, recognizing the merit of this claim. And finally, *Robinson* makes clear that *Herron* was contrary to "clearly established," binding U.S. Supreme Court precedent—beyond all possible disagreement among fair-minded jurists. *See Robinson*, 901 F.3d at 714; *Key*, 798 F.3d at 449. Given all of these factors, the change in Michigan law was "clearly foreshadowed," and Chase's appellate attorney's failure to raise this claim was constitutionally deficient.

The district court below reached a contrary conclusion, determining that the merit of Chase's *Alleyne* claim was unclear at the time of Chase's direct appeal. But it did so by citing to our cases that discuss *Alleyne*'s impact on the *advisory* federal sentencing guidelines. *See United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014); *United States v. James*, 575 F. App'x 588, 595 (6th Cir. 2014). These cases are not informative regarding *Alleyne*'s impact on the constitutionality of Michigan's *mandatory* sentencing regime. Indeed, when the Michigan Supreme Court ultimately addressed this question, it adopted the same remedy that the U.S. Supreme Court had imposed in *United States v. Booker*, 543 U.S. 220, 245 (2005), years earlier in regard to the federal guidelines; that is, it made the Michigan sentencing guidelines advisory, because only advisory guidelines could comply with the Sixth Amendment. *See Lockridge*, 870 N.W.2d at 506.

*Robinson* is unambiguous in its determination that *Alleyne* itself, when it was issued in June 2013, "clearly established" that Michigan's use of judge-found facts to raise a defendant's mandatory minimum sentence was unconstitutional, *Robinson*, 901 F.3d at 714, and at the time of Chase's direct appeal existing decisions "clearly foreshadowed" that Michigan law would soon recognize that fact, *Lobbins*, 900 F.3d at 803. Chase's appellate counsel's performance was therefore constitutionally deficient, which provides cause to excuse any procedural default of his claim. *See Lucas*, 179 F.3d at 418.

**B. Prejudice**

"To establish sufficient prejudice" under *Strickland*, and, in turn, "overcome procedural default," "a petitioner must show a 'reasonable probability' that, but for her counsel's errors, a different result likely would have occurred." *Ege*, 485 F.3d at 379 (quoting *Strickland,* 466 U.S. at 694). Where a petitioner has asserted ineffective assistance of appellate counsel, we ask if there is a "reasonable probability that, but for his counsel's defective performance, [the petitioner] would have prevailed on appeal." *Mapes*, 388 F.3d at 194. Here, Chase does not need to show that "his sentence on remand would have differed from the sentence imposed originally," but instead must only show "that had appellate counsel raised the [*Alleyne*] issue on appeal, there is a reasonable probability that [Chase] would have received a new sentencing proceeding." *Evans v. Hudson*, 575 F.3d 560, 565 n.1 (6th Cir. 2009).

There is more than a reasonable probability that, had Chase's appellate counsel raised an *Alleyne* claim, he would have received a new sentencing proceeding. Numerous defendants who raised this claim around the time of Chase's direct appeal ultimately had their cases remanded to the state sentencing court. *See, e.g.*, *Cutter*, 878 N.W.2d at 286; *Horn*, 870 N.W.2d at 896. Even if the Michigan Court of Appeals had rejected Chase's *Alleyne* claim under *Herron*, there is a reasonable probability that, if Chase's attorney had included an *Alleyne* claim in his direct appeal, Chase would have received relief from the Michigan Supreme Court—just like the many other defendants who, like Chase, filed applications for leave to appeal to Michigan's highest court. *Compare Chase*, 862 N.W.2d at 202 (rejecting Chase's application for leave to appeal on April 28, 2015), *with People v. Minor*, 870 N.W.2d 915 (Mich. 2015) (holding—on that same day in April—the defendant's application for leave to appeal in abeyance until *Lockridge* was decided because the defendant had raised an *Alleyne* claim on direct appeal, then remanding to the sentencing court after *Lockridge* was issued). Thus, Chase's appellate counsel's failure to raise an *Alleyne* claim was a "but for" cause of Chase's failure to receive a new sentencing proceeding. *See Strickland,* 466 U.S. at 694.

The Second Circuit has addressed this situation directly, making clear that "[t]o establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful before the [state's highest court][,]'"

and "[w]here the highest court's eventual ruling was easily predictable, . . . even an adverse ruling by the intermediate appellate court on the very claim at issue d[oes] not preclude a finding that there was a reasonable probability that the claim would have succeeded in the state's highest court." *Mayo*, 13 F.3d at 534. We agree with the Second Circuit, and under this framework Chase can easily show prejudice.

Because there is a reasonable probability that, but for his appellate counsel's error, Chase would have received relief from the Michigan Supreme Court, he has shown prejudice to excuse any procedural default of his *Alleyne* claim. *See Joseph*, 469 F.3d at 462–63 ("establishing *Strickland* prejudice likewise establishes prejudice for purposes of cause and prejudice" to excuse a procedural default).

### C. The Merits of Chase's *Alleyne* Claim

Given that Chase has shown cause and prejudice to excuse his procedural default, we are able to reach the merits of his *Alleyne* claim. *See id.* at 463. Chase asks us to review his claim de novo, arguing that the state trial court only denied his claim on procedural grounds and did not "adjudicate[]" his claim "on the merits" within the meaning of 28 U.S.C. § 2254(d). *See, e.g.*, *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (explaining that where the last-reasoned state court decision addressed a claim "entirely based on a procedural bar . . . we review [the] claim de novo"). We agree. But even if we were to review his claim under AEDPA deference, Chase's claim would still succeed, as a decision upholding the sentencing court's use of judge-found facts to raise Chase's mandatory minimum sentence would be "contrary to . . . clearly established Federal law, as determined by the [U.S.] Supreme Court" in *Alleyne*. *See Robinson*, 901 F.3d at 717 (quoting § 2254(d)(1)).

The Warden readily concedes that Chase's *Alleyne* claim is meritorious, explaining: "Undisputedly, the sentencing court used judge-found facts in this case to calculate Chase's guidelines minimum sentence range," and under *Alleyne*, "because the sentencing court was *required* to adhere to a sentencing guidelines range that was calculated using those facts, the sentence violated Chase's Sixth Amendment right to a jury trial." (Warden Br. 20–21.) We agree and therefore conclude that Chase is entitled to habeas relief on his *Alleyne* claim.

## III.  CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court, conditionally grant Chase's petition for a writ of habeas corpus, and remand to the district court with instructions to remand to the state sentencing court for sentencing proceedings consistent with this opinion and the United States Constitution.  The district court shall grant a writ of habeas corpus unless the state initiates such sentencing proceedings within 180 days from the date of this opinion.

---

**DISSENT**

---

ALICE M. BATCHELDER, Circuit Judge, dissenting.  The majority sees this as the "rare case" in which an appellate attorney who declined to raise an unwinnable legal challenge, one that was undeniably foreclosed by then-prevailing precedent, was constitutionally deficient for doing so because a later change in the law was clearly foreshadowed.  I respectfully disagree.

As the majority said, the Michigan trial court sentenced Chase on June 14, 2013, the Supreme Court issued *Alleyne v. United States*, 570 U.S. 99 (2013), on June 17, 2013, and Chase's court-appointed appellate attorney filed his first brief on March 20, 2014.  Meanwhile, on December 12, 2013, the first of several Michigan appellate courts had denied an *Alleyne*-based challenge to Michigan's sentencing scheme.  *Michigan v. Herron*, 845 N.W.2d 533, 540 (Mich. Ct. App. 2013); *accord Michigan v. Lockridge*, 849 N.W.2d 388, 391 (Mich. Ct. App. Feb. 13, 2014); *Michigan v. Duenaz*, 854 N.W.2d 531, 549 (Mich. Ct. App. Jul. 10, 2014); *Michigan v. Galloway*, 858 N.W.2d 520, 530 (Mich. Ct. App. Oct. 7, 2014); *see also United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014) ("*Alleyne* dealt with judge-found facts that raised the mandatory minimum sentence under a statute, not judge found facts that trigger an increased guidelines range."); *United States v. James*, 575 F. App'x 588, 595 (6th Cir. 2014) (relying, in part, on "four post-*Alleyne* unanimous panels of the [Sixth Circuit, which had] taken for granted that the rule of *Alleyne* applies only to mandatory minimum sentences").

Therefore, when Chase's attorney filed his brief on March 20, 2014, and when the Michigan appellate court decided Chase's appeal on October 21, 2014, the law in Michigan (as in the Sixth Circuit) was that *Alleyne* did not affect Michigan's sentencing scheme.  If Chase's attorney had raised that argument at that time, it would have failed; the Michigan appellate court would have had to reject it based on the above-cited precedent and Michigan Court Rule 7.215(j)(1).  No one disputes this.  The most the attorney could have accomplished would have been to preserve the claim for future consideration by the Michigan Supreme Court, though the state of Michigan law was the same on April 28, 2015, when Chase was denied leave to appeal.

On July 29, 2015, the Michigan Supreme Court overruled *Herron*, decided that Michigan's sentencing scheme *is* subject to *Alleyne*, and held the scheme unconstitutional as applied (i.e., as mandatory). *Michigan v. Lockridge*, 870 N.W.2d 502, 512, 519 (Mich. 2015). This was a severely contested decision, in which the *Lockridge* majority produced an 11-page analysis, *id.* at 508-19, to overcome the objection of a two-judge, 35-page dissent, *id.* at 525-60. And the majority crafted a novel form of plain-error review because, "given the recent origin of *Alleyne*, virtually all of those cases involve challenges that were not preserved in the trial court." *Id.* at 522. I do not read anything in *Lockridge* (much less its dissent) that suggests that this decision was inevitable or in any way "clearly foreshadowed" by Michigan precedent.

But the majority here believes that it was, and that Chase's attorney not only should have predicted this change in the law but was constitutionally deficient for failing to do so. In *Thompson v. Warden*, 598 F.3d 281, 288 (6th Cir. 2010), we made the unremarkable holding that an "appellate counsel is not ineffective for failing to predict the development of the law." We cited *Lott v. Coyle*, 261 F.3d 594, 609 (6th Cir. 2001) (holding that appellate counsel was not ineffective for failing to raise a certain argument because "we cannot conclude that Lott's counsel should have reasonably anticipated" the change in the law, even though there were conflicting opinions in the Ohio Court of Appeals on the issue), and *Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986) (noting that "nonegregious errors such as failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel").[1]

Returning to *Thompson*, 598 F.3d at 287, we said there that, "during the entire time that Thompson's appeal was pending, a *Blakely* claim had virtually no chance of success in the Ohio Court of Appeals[]" and "Thompson's appellate counsel did not perform deficiently by failing to raise a *Blakely* claim that was virtually certain to be rejected." We continued:

---

[1]In *Nichols v. United States*, 563 F.3d 240, 253-57 (6th Cir. 2009) (en banc), Judge Moore wrote an emphatic dissent, arguing that Nichols's appellate counsel was constitutionally ineffective for failing to anticipate *Blakely* and raise a challenge, based on *Apprendi*, to preserve it until the Supreme Court issued *Blakely* and *Booker*. That position did not garner majority support, indicating that the majority of the court rejected that proposition.

> We are aware, of course, of the fact that the Ohio Supreme Court concluded that *Blakely* invalidated portions of Ohio's sentencing laws the year after Thompson's appeal was briefed and argued. But *Strickland* specifically warns of 'the distorting effects of hindsight' when considering the strategic choices made by counsel.

*Id*. at 288 (citations omitted).  But we also added the caveat that is pertinent now:

> On the other hand, counsel's failure to raise an issue whose resolution is clearly foreshadowed by existing decisions might constitute ineffective assistance of counsel.  *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999) (noting that counsel will be found ineffective for failing to raise an argument that would have been unsuccessful at the time '*only in a rare case*,' and holding that counsel was not ineffective for failing to make a particular argument under Kentucky law where the law was 'in a curious state' at the time).

> Given that the vast majority of precedent in Ohio had already determined that *Blakely* was not applicable to Ohio's sentencing laws at the time Thompson's appeal was decided, the Ohio Supreme Court's later decision to the contrary was not '*clearly foreshadowed*.'  If anything, the decision was an abrupt change from prior Ohio precedent.  Thompson therefore cannot show that his counsel performed deficiently by failing to raise a *Blakely* claim, and he thus fails to satisfy the performance prong of *Strickland*.

*Id*. (certain citations omitted; paragraph break and emphasis inserted).

In the present case, the law in Michigan was clear and untarnished the entire time Chase's appeal was pending: an *Alleyne* claim had no possibility of success in the Michigan appellate court, unless the court violated or ignored Michigan precedent.  Chase's appellate attorney was not deficient for failing to raise an *Alleyne* claim that was certain to be rejected.  Thus, the question becomes: was the applicability of *Alleyne* to Michigan's sentencing scheme, to invalidate it (i.e., the *Lockridge* decision), "an issue whose resolution [wa]s clearly foreshadowed by existing decisions[, such that the attorney's failure to raise the issue] might constitute ineffective assistance of counsel."  *See Thompson*, 598 F.3d at 288; *Lucas*, 179 F.3d at 420.

While the precedent preceding *Lockridge* was sparse, it was unanimous in holding that *Alleyne* did not affect Michigan's sentencing laws.  As cited above, this was both Michigan appellate court precedent and Sixth Circuit precedent.  Moreover, the Michigan Supreme Court's lengthy analysis in its *Lockridge* decision, its express overruling of the *Herron* precedent, and its emphatic dissent belie the argument that the outcome was "clearly foreshadowed."  Rather, the

*Lockridge* decision was an abrupt change from prior Michigan precedent. *See Thompson*, 598 F.3d at 288. In that light, Chase's attorney was not deficient for failing to raise an *Alleyne* claim, *see id.*; *Lucas*, 179 F.3d at 420, so Chase cannot satisfy the performance prong of *Strickland* nor demonstrate cause and prejudice to overcome his procedural default.

I cannot find Chase's attorney constitutionally deficient for failing to predict an outcome that was not "clearly foreshadowed" or for failing to raise a claim that was certain to be rejected. Therefore, I would affirm the judgment of the district court and I respectfully dissent.