NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0509n.06

Case No. 19-1412

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 01, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BILLIE McKINNEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| CONNIE HORTON, Warden, | ) | |
| | ) | |
| Defendant-Appellee. | ) | O P I N I O N |
| | ) | |

BEFORE:     MOORE, CLAY, and McKEAGUE, Circuit Judges.

**CLAY, Circuit Judge.** Petitioner Billie McKinney appeals the district court's order denying his petition for habeas corpus. 28 U.S.C. § 2254. In 2014, a jury convicted McKinney of assault with intent to commit murder, and associated firearms offenses, stemming from a shooting at a high school graduation party. McKinney alleges that during his trial his constitutional right to be present during all critical stages was violated, his trial counsel provided ineffective assistance by failing to object to this violation of his rights, his appellate counsel provided ineffective assistance by failing to raise these claims on direct appeal, and he was sentenced based on judge-found facts in violation of the Sixth Amendment. The Warden opposed McKinney's petition and the district court denied it. For the reasons provided in this opinion, we **AFFIRM** the district court's order.

**BACKGROUND**

On July 14, 2013, Alicia Martin hosted a high school graduation party at her residence in Kentwood, Michigan. *People v. McKinney*, No. 321843, 2015 WL 5311622, at *1 (Mich. Ct. App. Sept. 10, 2015).[1] The party was held in Martin's backyard, where there was an above-ground pool enclosed by a deck. *Id.* At trial, Martin testified that she invited approximately fifty friends, but by 10:00 or 11:00 p.m., word of her party had spread and there were approximately 150 people in attendance. *Id.* Multiple witnesses testified that individuals associated with a local gang known as "Bouldercrest" were in attendance. *Id.*

Several trial witnesses also testified that around 11:30 p.m., a group of six to ten individuals associated with the "Bemis" gang—a rival of the Bouldercrest gang—arrived at the party. *Id.* Petitioner McKinney was among them. *Id.* According to witnesses, Bemis gang members began yelling at Bouldercrest gang members and, at some point, McKinney was punched and fell to the ground. *Id.* A fight ensued between McKinney and other members of the Bemis gang and members of the Bouldercrest gang. *Id.* During the fight, gunshots were fired and several people were injured, including two Bouldercrest gang members and one bystander. *Id.*

The evidence that McKinney was the shooter was significant. Witness identifications of the shooter varied, but several witnesses specifically identified McKinney. *Id.* Additionally, other witnesses recalled that the shooter was wearing an orange, "orangish," or "bright" shirt, which matched the description of the shirt McKinney wore that evening. *Id.* Moreover, while McKinney awaited trial in jail, he admitted to the shooting to a fellow pretrial detainee, Jacqte Beal. *Id.* Beal recorded some of McKinney's confession after agreeing to wear a recording device while speaking

---

[1] We may assume that the state court's recitation of the facts is correct because McKinney has not rebutted it through clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

with McKinney, in exchange for a generous plea agreement in his own case. McKinney admitted to Beal that he was one of two shooters at the party and he identified the type of weapon he used. *Id.*

Following a jury trial, McKinney was convicted of assault with intent to commit murder, Mich. Comp. Laws § 750.83; carrying a concealed weapon, § 750.227; and possession of a firearm during the commission of a felony ("felony-firearm"), § 750.227b. The trial court sentenced McKinney to twenty-seven to fifty years' imprisonment for his assault conviction and two to five years for his concealed-weapon conviction, to be served concurrently, along with a consecutive two-year term for his felony-firearm conviction. *McKinney*, 2015 WL 5311622 at *1.

McKinney's direct appeals of his conviction were unsuccessful. The Michigan Court of Appeals affirmed his conviction in 2015. *Id.* at *6. The Michigan Supreme Court denied leave to appeal in 2016. *People v. McKinney*, 877 N.W.2d 725 (Mich. 2016) (order). McKinney proceeded to file a motion for relief from judgment in the state trial court, which was also denied. The Court of Appeals and the Michigan Supreme Court subsequently denied leave to appeal that decision.

McKinney subsequently sought federal habeas review, 28 U.S.C. § 2254, raising eleven grounds for relief. The district court denied relief, finding seven of his claims procedurally defaulted and his remaining four claims non-cognizable or meritless. It also denied McKinney a certificate of appealability ("COA") on any of his claims. This appeal followed.

We granted a COA on four of McKinney's claims: Claim Five, alleging a violation of his constitutional right to be present at critical stages of his trial; Claim Nine, alleging ineffective assistance of trial counsel for waiving McKinney's presence at a critical stage of his trial; Claim Ten, claiming the trial court relied on facts at sentencing that were not found by a jury; and Claim Eleven, alleging ineffective assistance of appellate counsel for failing to present an argument on

appeal pertaining to the alleged violation of his right to be present during a critical stage of his trial. *McKinney v. Nagy*, No. 19-1412 (6th Cir. Nov. 4, 2019) (order).

## DISCUSSION

We review a district court's order granting or denying a writ of habeas corpus *de novo*. *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000). A district court's finding that a petitioner has procedurally defaulted on a claim is also reviewed *de novo*. *Goldberg v. Maloney*, 692 F.3d 534, 537 (6th Cir. 2012). Factual findings made by the district court are generally reviewed for clear error, but we apply *de novo* review "where the district court has made factual determinations based on its review of [state court] trial transcripts and other court records." *Mackey v. Russell*, 148 F. App'x 355, 359 (6th Cir. 2005); *see also Wolfe*, 232 F.3d at 501 (same).

Moreover, pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a habeas petition with respect to any claim that was adjudicated on the merits in a state court unless the adjudication resulted in a decision that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) was based upon an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

A decision is "contrary" to federal law if the state court arrived at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" of federal law occurs when "a state-court decision unreasonably applies the law of th[e Supreme] Court to the facts of a prisoner's case." *Id*. at 409.

## I.    Right to Be Present During Critical Stages of a Trial

McKinney claims that his constitutional right to be present during the critical stages of his trial was violated when he was absent from the courtroom during a discussion between his counsel, the prosecutor, and the judge. During that discussion a portion of the jury instructions were agreed upon and McKinney's counsel indicated to the court that he would not be introducing into evidence an allegedly exculpatory police interview with a purported witness to the shooting. McKinney further claims that his trial counsel provided ineffective assistance by permitting McKinney's absence while this discussion occurred. The Warden maintains that because McKinney could have raised these claims in his direct appeal in state court, but failed to do so, he has procedurally defaulted on them. The district court agreed with the Warden and found McKinney's claims procedurally defaulted.

"When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000). We have previously found that "procedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). In the present case, McKinney did not raise the instant claims for relief in his direct appeal of his conviction. Instead, he first raised them in his motion for relief

from judgment under Michigan Court Rule ("MCR") 6.500 *et seq.*, in the state trial court after the Michigan Supreme Court denied his direct appeal.

MCR 6.508(D)(3) provides that a court may not grant a motion for relief from judgment if the motion "alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter." We have held that Michigan court orders denying relief under MCR 6.508(D)(3) can constitute a procedural bar on federal habeas review. *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc) (referring to Rule 6.508(D)(3) as a "procedural-default rule"); *Willis*, 351 F.3d at 744–45.[2]

In the present case, McKinney appears to have procedurally defaulted on his claims. He failed to comply with Rule 6.508(D)(3) by raising the instant claims for relief on direct appeal, the state court enforced this rule to deny his motion for relief, and this "procedural forfeiture" provides an "adequate and independent" state law ground that precludes review of McKinney's federal constitutional claim. *See Willis*, 351 F.3d at 744.

However, Rule 6.508(D)(3) permits defendants to raise claims that could have been previously brought if the defendant demonstrates "(a) good cause for failure to raise such grounds on appeal or in the prior motion, and (b) actual prejudice from the alleged irregularities that support the claim for relief." MCR 6.508(D)(3)(a)–(b). The state trial court in McKinney's case observed that "good cause" can be demonstrated by showing "ineffective assistance of appellate counsel

---

[2] We also held in *Guilmette* that because Rule 6.508(D) has procedural and substantive components, we must look "to the last reasoned state court opinion to determine the basis for the state court's rejection of [a petitioner's] claim." *Guilmette*, 624 F.3d at 291. That is, we must determine whether the state court denied relief because the petitioner failed to establish his entitlement to relief under Rule 6.508(D) on the merits of his claim or because he failed to meet its procedural requirements. In the present case, the Michigan circuit court and state supreme court orders are brief and do not specify the grounds on which the lower court's decision is affirmed. However, the state trial court's decision indicates that McKinney has not satisfied the procedural requirements of MCR 6.508(D)(3).

based on the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." R. 3, State Trial Ct. Order, PageID # 210; *see also Sheffield v. Burt*, 731 F. App'x 438, 442 (6th Cir. 2018) ("Ineffective appellate counsel is sufficient to excuse procedural default if a petitioner can show that appellate counsel 'unreasonably failed to discover' a 'nonfrivolous issue[ ]' on appeal." (alteration in original) (quoting *Smith v. Robbins*, 528 U.S. 259, 285 (2000))).

Nevertheless, the state trial court denied McKinney's motion for relief because the arguments he raised to demonstrate "good cause" lacked merit and so "appellate counsel was not ineffective for failing to raise" them in McKinney's direct appeal. R. 3, State Trial Ct. Order, PageID # 210. The court also noted that McKinney was aware of the instant claims for relief because McKinney himself claimed that he told his appellate counsel about these issues at the time of his direct appeal. Yet McKinney did not raise them in his Standard 4 brief, which he filed to raise issues his appellate counsel declined to raise in his merits brief on appeal.[3] Therefore, "it is difficult to see how he can place the blame solely on appellate counsel and claim good cause for failing to raise these issues" on direct appeal. *Id.*

The district court focused on McKinney's failure to raise the instant claims in his Standard 4 brief to find that McKinney has failed to demonstrate cause for his procedural default. In doing so the district court relied on our unpublished opinion in *Sheffield v. Burt*, 731 F. App'x 438 (6th Cir. 2018). In *Sheffield*, the habeas petitioner raised a claim for the first time in his state collateral attack. *Id.* at 441–42. The state trial court found that the petitioner had procedurally defaulted on this claim under MCR 6.508(D) and that he failed to demonstrate cause and prejudice for this default. *Id.* This was because the petitioner could not show that his appellate counsel provided

---

[3] A Standard 4 brief is a *pro se* appellate brief filed by a defendant in Michigan court who wishes to raise claims his counsel refuses to raise on his behalf. Defendants are not required to file one and it is filed in addition to any briefing filed by counsel. *See* Mich. Admin. Order No. 2004-6.

ineffective assistance by not raising the claim on appeal and, even if he could, he did not suffer prejudice from his counsel's deficient performance because he could have raised the claim himself in the Standard 4 brief he chose to file, but did not include the claim in his brief. *See id.* at 442.

The petitioner then sought habeas relief in federal court. The district court denied the petition on the merits, rather than first evaluating whether the petitioner procedurally defaulted his claim. *Id.* at 441. On appeal in this Court, we held that the petitioner procedurally defaulted on his claim for the same reasons given by the state trial court: his appellate counsel provided effective assistance and the petitioner "had the opportunity to raise any issues in his Standard 4 brief on direct appeal that he felt his appellate counsel should have raised. He did not raise the issue." *Id.* at 442.

In *Sheffield*, as in the present case, the state trial court considered the underlying merits of the petitioner's procedurally defaulted claim to determine if there was cause and prejudice for the default. The fact that the petitioner filed a Standard 4 brief and therefore had the chance to raise the defaulted claims on direct appeal may have reinforced our conclusion that the claim was defaulted, but it was not dispositive. We do not read *Sheffield*, a recent unpublished decision of this Court, to mean that a habeas petitioner's failure to raise certain claims in his optional Standard 4 brief while on appeal in state court precludes a later finding that those claims constitute cause to excuse a procedural default based on ineffective assistance of appellate counsel. *See Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) ("Unpublished decisions in the Sixth Circuit are, of course, not binding precedent on subsequent panels.")

Such a holding would be at odds with the vital interests protected by the right to effective assistance of counsel. For example, in *Martinez v. Ryan*, 566 U.S. 1, 12 (2012), the Supreme Court observed that "[a] prisoner's inability to present a claim of trial error is of particular concern when

the claim is one of ineffective assistance of counsel. The right to the effective assistance of counsel at trial is a bedrock principle in our justice system." It recognized the difficulties faced by *pro se* litigants: "[t]he prisoner, unlearned in the law, may not comply with the State's procedural rules or may misapprehend the substantive details of federal constitutional law." *Id*; *see also Powell v. Alabama*, 287 U.S. 45, 69 (1932) ("[A layperson] lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.")

Penalizing a petitioner for attempting to participate in his own defense by preventing him from asserting that his counsel provided ineffective assistance by not raising certain claims, because the petitioner could have raised those claims himself, would undermine these constitutional principles. We do not think the panel in *Sheffield* intended this result in referencing the petitioner's Standard 4 brief. The panel did not cite any cases in support of its statement nor provide any analysis beyond noting that the record indicated that the petitioner was aware of the claims he failed to raise in his brief. *Sheffield*, 731 F. App'x at 442 n.2. Therefore, the district court's reliance on *Sheffield* was in error. It should have performed a full analysis of McKinney's ineffective assistance of appellate counsel claim and determined whether he has established cause and prejudice for his procedural default. That said, we may "affirm a decision of the district court on any grounds supported by the record, even if different from those relied on by the district court." *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999).

On appeal, McKinney repeats his argument that his appellate counsel's failure to raise the instant claims for relief constitutes ineffective assistance of counsel that excuses his procedural default on these claims in state court. The Warden responds that the state trial court was correct in

finding that McKinney has not demonstrated cause and prejudice for his procedural defaults because his instant claims for relief are meritless.

As an initial matter, although the state trial court engaged in an analysis of the underlying merits of McKinney's instant claims to find that he did not satisfy the cause and prejudice requirement, this was not a decision "on the merits" entitled to AEDPA deference. Instead, we consider petitioner's claim that ineffective assistance of appellate counsel constitutes cause to excuse his procedural default under *Strickland*, rather than deferring to the state trial court's application of this standard. *See, e.g.*, *Willis*, 351 F.3d at 745; *Hinkle v. Randle*, 271 F.3d 239, 245–46 (6th Cir. 2001). Moreover, in *Reeves v. Campbell*, 708 F. App'x 230 (6th Cir. 2017), we held that "a petitioner's claims are procedurally defaulted if the state habeas court has 'clearly and expressly' invoked the petitioner's failure to comply with state procedural requirements as a basis for denying relief in state court." *Id.* at 237 (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). However, if the state court's decision was ambiguous as to whether it was based on a procedural rule, then we "presume that the state-court determination was on the merits." *Id.* This illustrates that a dichotomy exists between state court decisions based on procedural grounds, which are not entitled to AEDPA deference, and decisions "on the merits," which do receive deference. 28 U.S.C. § 2254(d). As noted above, the state trial court in the present case expressly rejected McKinney's instant claims for relief based on MCR 6.508(D)(3). Consequently, it did not issue a decision on the merits. Therefore, we do not defer to the state trial court's decision that McKinney has not shown cause and prejudice for his procedural default.

McKinney's claim for "good cause" for his procedural default—i.e. that his appellate counsel provided ineffective assistance—relies on the proposition that his right to be present during a critical stage of his trial was violated when he was absent for the conference at issue. That

is, his appellate counsel was ineffective during his direct appeal by failing to (1) raise McKinney's alleged constitutional violation and (2) argue that his trial counsel was ineffective for not objecting to this violation during the trial.

Defendants have a due process right "to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). This right encompasses situations where "a fair and just hearing would be thwarted" by the defendant's absence. *Id.* (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108 (1934), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964)). However, the right "exists only when 'his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *United States v. Henderson*, 626 F.3d 326, 343 (6th Cir. 2010) (quoting *United States v. Brika*, 416 F.3d 514, 526 (6th Cir. 2005). A defendant's "privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'" *Stincer*, 482 U.S. at 745 (quoting *Snyder*, 291 U.S. at 106–07).

In the present case, McKinney was not present in the courtroom during a conference at which the court and counsel for both parties agreed to jury instructions regarding a letter McKinney sent to his girlfriend while he was in jail. The letter asked McKinney's girlfriend to provide an alibi for him. *People v. McKinney*, No. 321843, 2015 WL 5311622, at *1 (Mich. Ct. App. Sept. 10, 2015). The trial court instructed the jury that it could interpret the letter as "indicative of guilt," because it suggested that McKinney lied to police and was attempting to fabricate an alibi, but that it "does not in and of itself . . . prove guilt." R. 14-3, Trial Tr., PageID # 727. On appeal, McKinney claims that had he been present he would have "insisted that the jury also be instructed that the letter was evidence of his innocence or that it not be given any instruction as to the letter." Appellant's Br. at 33–34.

Additionally, at the conference McKinney's counsel indicated to the court that he would not be introducing into evidence the recording of a police interview with Leontae Craig, a purported witness to incident. McKinney claims that had he been present "he could have protested the exclusion of the recording of the critical witness Leontae Craig, whose testimony he had always wanted to present." *Id.* at 34. Although it appears that the recording is not in the record, McKinney has produced an affidavit signed by Craig that tells a decidedly different version of events from the other witnesses. R. 3, Craig Aff., PageID # 178–80. Craig swears that he saw McKinney lying on the ground after being punched, that Craig helped McKinney up and led him to Craig's vehicle, and "I know for a fact that Billie McKinney was not shooting at the party because when the shots was going off, I was helping him get in the truck." *Id.* at 179. On appeal, the parties agree that this affidavit fairly reflects the story he told police officers during his interview.

The state trial court found that McKinney's right to be present during critical stages of his trial did not encompass the "conference and discussion of law" in which these decisions were made by counsel and the court. R. 3, State Trial Ct. Order, PageID # 206. "Legal matters and basic 'housekeeping' issues regarding instructions and exhibits are often brought up at times when the defendant is not present." *Id.* It relied on a case from the Michigan Court of Appeals for the proposition that "motions, conferences and discussions of law, even during trial, do not involve substantial rights vital to the defendant's participation in his defense." *People v. Thomas*, 208 N.W.2d 51, 56 (Mich. Ct. App. 1973).

On appeal, the Warden echoes the state trial court's findings by contending that the conference was not a critical stage of the trial because the discussion regarding jury instructions and the admissibility of the Craig interview were mere housekeeping matters and a defendant's presence is not required where a discussion "deal[s] with matters of law or decisions regarding

trial procedures and the progress of the trial." Appellee's Br. at 34–35 (quoting *United States v. Taylor*, 489 F. App'x 34, 44 (6th Cir. 2012)). McKinney maintains that his "rights to personal presence were clearly violated and his absence from the courtroom frustrated the fairness of the trial." Appellant's Br. at 27.

We are not convinced that the fairness of the trial was impacted by McKinney's exclusion from the conference. McKinney had an opportunity to object to the jury instructions when they were actually given to the jury—which is a critical stage of the trial at which a defendant has a right to be present. *See Evans v. United States*, 284 F.2d 393, 395 (6th Cir. 1960). In fact, after the jury was charged and it left the courtroom, the trial court recognized that "[w]e had a short discussion earlier about instructions, and I realized Mr. McKinney wasn't here." R. 14-5, Trial Tr., PageID # 821. It then asked the parties whether there were any objections to the instructions. There is no indication in the record that McKinney sought to object to the instructions or clarify what had been discussed outside his presence. This undercuts any notion that "his presence would [have] contribute[d] to the fairness of the procedure." *Stincer*, 482 U.S. at 745.

Additionally, the police recording of the Craig interview would have been inadmissible as hearsay for the purposes of establishing McKinney's innocence. Craig did not testify at trial and so his interview with the police could not have been introduced for the truth of the matter asserted—i.e., that McKinney was not the shooter because he was being tended to in Craig's vehicle.[4] Therefore, McKinney has not demonstrated that his presence at the conference would

---

[4] In his direct appeal of his conviction, McKinney argued that police investigators intimidated Craig into not testifying. However, the state court of appeals found that "the defense subpoenaed Craig to testify at trial" and "nothing in the record establishes that it was not Craig's free and voluntary choice to not testify." R. 1-3, Ct. of Appeals Op., PageID # 89. Police investigators simply told Craig that they did not believe his story and that if they could prove that his statements were false, he could be charged with perjury.

On appeal in this Court, the only evidence McKinney has to rebut these findings is Craig's affidavit itself, in which Craig claims that McKinney's counsel never called him to testify. This contention is at odds with McKinney's

have contributed "to the fairness of the procedure" with respect to the Craig interview. *Id.*; *see also* *Taylor*, 489 F. App'x at 44 (finding no due process violation where "[t]he record neither indicates that Taylor 'could have done anything had he been at the hearing nor would he have gained anything by attending.'" (quoting *Stincer*, 482 U.S. at 747)).

Moreover, other circuits have specifically held that a defendant's right to be present during critical stages of her trial does not extend to conferences regarding jury instructions or counsel's decision to introduce evidence. *See United States v. Gunter*, 631 F.2d 583, 589 (8th Cir. 1980) (characterizing an in-chambers conference regarding evidence the prosecution sought to introduce as a "conference upon a question of law, at which the defendant need not be present"); *United States v. Graves*, 669 F.2d 964, 972 (5th Cir. 1982) ("A defendant does not have a federal constitutional or statutory right to attend a conference between the trial court and counsel concerned with the purely legal matter of determining what jury instructions the trial court will issue.") These decisions reinforce our conclusion that McKinney's right to due process was not violated by his absence during the brief conference at issue.

McKinney further argues that his trial attorney provided ineffective assistance by failing to object to his client's absence during the conference. To demonstrate ineffective assistance of counsel, a petitioner must show that counsel performed deficiently and that counsel's performance was prejudicial to his defense. *Strickland*, 466 U.S. at 687–88. The Supreme Court has further held that to demonstrate deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. No error was made in the present case because McKinney has not

_____

earlier (rejected) argument that it was police malfeasance that caused Craig to not testify, rather than his own attorney's failure to call Craig as a witness.

demonstrated that his due process right to be present during the critical stages of his trial was violated. Therefore, his attorney could not have provided deficient counsel in failing to object to McKinney's absence.

In light of the foregoing, McKinney's claim that his appellate counsel provided ineffective assistance fails. Counsel did not fail to discover a nonfrivolous issue in the course of conducting McKinney's appeal, because neither claim counsel declined to raise has merit. *See Smith*, 528 U.S. at 285.[5] Therefore, McKinney cannot establish cause for failing to raise these claims on direct appeal and he has procedurally defaulted them.

Although McKinney has procedurally defaulted his due process and ineffective assistance of trial counsel claims, we may still consider a procedurally defaulted federal claim "if a manifest miscarriage of justice would otherwise result." *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014). The Supreme Court has observed that a fundamental miscarriage of justice can be shown "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of actual innocence "requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. If McKinney can satisfy this narrow exception, then we may consider his otherwise procedurally defaulted claims. *See Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010).

---

[5] This also means that McKinney's stand-alone claim for habeas relief based on his appellate counsel's allegedly ineffective assistance (Claim XI) also fails.

McKinney suggests that the Craig affidavit substantiates his claim of actual innocence. However, in our order issuing a limited COA on McKinney's claims, we examined whether McKinney was prejudiced by the absence of Craig's testimony. We found that "[c]onsidering the remaining testimony, it was not prejudicial to omit Craig's testimony, particularly when Craig chose not to appear. As a result, this ineffective-assistance-of-trial-counsel claim does not have arguable merit." *McKinney*, No. 19-1412 at 11. Because we did not find prejudice in the decision to omit Craig's testimony, we cannot find that the same evidence in the form of an affidavit, rather than trial testimony, proves McKinney's innocence. *See Schlup*, 513 U.S. at 327 (holding that the actual innocence standard requires a petitioner "to make a stronger showing than that needed to establish prejudice" under *Strickland*).

Moreover, McKinney does not explain his delay in procuring the affidavit. It was executed in March 2017, approximately three years after McKinney's trial in 2014. This three-year delay casts further doubt on McKinney's actual innocence claim because McKinney was aware of Craig's version of events at the time of his trial. *See McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing.")

All told, McKinney has not met his burden to show that he is actually innocent of his crime of conviction. Therefore, he has not demonstrated that a miscarriage of justice is likely to result if we do not consider his procedurally defaulted claims. Consequently, McKinney's claims for relief based on his right to be present during critical stages of his trial (Claim V) and ineffective assistance of trial counsel (Claim IX) are procedurally barred by the state trial court's application of MCR 6.508(D).

## II.    Sixth Amendment Right to Trial by Jury

McKinney's remaining claim for relief (Claim X) asserts that he is entitled to habeas relief because the state trial court violated his Sixth Amendment right to a trial by jury by sentencing him according to judge-found facts that significantly raised his state sentencing guidelines range. In *People v. Lockridge*, 870 N.W.2d 502, 506 (Mich. 2015), the Michigan Supreme Court held that the state's mandatory sentencing guidelines scheme violated defendants' Sixth Amendment rights under *Alleyne v. United States*, 570 U.S. 99 (2013). In the present case, McKinney failed to raise a claim based upon judge-found facts until his state collateral proceedings, suggesting it too has been procedurally defaulted. However, the district court correctly found that because *Lockridge* had not been issued when the briefs in McKinney's direct appeal were filed and because Michigan law prior to *Lockridge* indicated that an argument based on *Alleyne* would be futile, there "may be cause to excuse McKinney's failure to raise the 'judge-found' facts issue on direct appeal." R. 5, Dist. Ct. Order, PageID # 230. It nevertheless found that McKinney could not demonstrate prejudice because the state trial court found "that it would have imposed the same sentence whether the guidelines were mandatory or just advisory." *Id.*; *see also* R. 3, State Trial Ct. Order, PageID # 209 (finding that "while a remand under *Lockridge* could have been requested . . . it would not have made a difference.").

Michigan law requires judges to calculate a defendant's sentencing range, in part, by scoring "offense variables" ("OV") for aggravating factors pertinent the offense, which are "generally scored on the basis of facts found by the court rather than a jury." *Lockridge*, 870 N.W.2d at 513. When the guidelines were mandatory, these judicially found facts and the concomitant OV scores, had the effect of increasing a defendant's minimum sentence. *See id.* ("A defendant's possible minimum sentence is increased as a result of [OV] scoring, and the court is

constrained to impose a minimum sentence in conformity with the applicable guidelines range that is increased by the scoring of those OVs."). According to McKinney, the OV calculation in his case increased his sentencing range from 108–225 months to 171–356 months.

In *Lockridge*, the Michigan Supreme Court found that, in light of *Alleyne*, "the Sixth Amendment does not permit judicial fact-finding to score OVs to increase the floor of the sentencing guidelines range." 870 N.W.2d at 519. The remedy was to "*Booker*-ize the Michigan sentencing guidelines, i.e., render them advisory only." *Id.* at 520; *see United States v. Booker*, 543 U.S. 220, 245 (2005). And the state supreme court instructed lower state courts that "in cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error." *Lockridge*, 870 N.W.2d at 523; *see also Robinson v. Woods*, 901 F.3d 710, 717–18 (6th Cir. 2018) (reaching the same conclusion as *Lockridge* and remanding a state prisoner's case to the district court with instructions to "remand to the state sentencing court for sentencing proceedings consistent with this opinion and the Constitution").

In his motion for relief from judgment, McKinney argued that he was entitled to resentencing based upon *Lockridge*. The trial court rejected his claim because "while a remand under *Lockridge* could have been requested . . . it would not have made a difference." R. 3, State Trial Ct. Order, PageID # 209. Instead, "based on the sentencing variables, which the Court found and still finds to be properly scored, defendant's minimum sentence range under the guidelines was 171 to 356 months. After hearing all of the evidence at trial and reviewing all of the sentencing materials, the Court found a minimum sentence of 27 years (324 months) to be proper." *Id.* It

emphasized that the "mandatory nature of the guidelines at the time of defendant's sentence did not impact his sentence." *Id.*

On appeal, McKinney does not address, let alone demonstrate, why the trial court's response to his argument was insufficient under *Lockridge*. He simply summarizes the applicable law and asserts that "Petitioner has clearly shown prejudice by the increase in his minimum sentence range . . . His Sixth Amendment rights were violated." Appellant's Br. at 44. Yet the state court acknowledged in its order denying McKinney's motion for relief from judgment that the guidelines were no longer mandatory. It nevertheless found that McKinney's range was correctly calculated and that it would impose the same sentence of 27 years' imprisonment if it granted McKinney a resentencing hearing. This determination satisfied the Michigan Supreme Court's directive that in cases involving sentences imposed before *Lockridge* was issued, "the trial court [must] determine whether that court would have imposed a materially different sentence but for the constitutional error." *Lockridge*, 870 N.W.2d at 523. If "the answer to that question is yes," then "the court shall order resentencing." *Id.* at 523–24. In the present case, the state trial court answered that question in the negative. Accordingly, McKinney cannot demonstrate prejudice from his appellate counsel's failure to raise this judge-found facts argument. Therefore, this claim is procedurally defaulted as well.

## CONCLUSION

For the reasons stated above, the district court's order denying McKinney's petition for a writ of habeas corpus is **AFFIRMED**.